THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD J. WHITTEN, Defendant-Appellant.

Fifth District    No. 5—92—0632

Opinion filed March 8, 1995.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Norbert J. Goetten, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Richard J. Whitten, appeals from his conviction for criminal sexual assault. Following a jury trial, the court sentenced defendant to four years' incarceration. On appeal, defendant raises the following issues: (1) that the State failed to prove that the victim was unable to give knowing consent, (2) that one of his convictions for criminal sexual assault must be vacated under the "one act, one crime" rule, (3) that the court erred in precluding defendant from examining complainant about her knowledge of sexual matters by erroneously applying the rape shield law, (4) that the court erred in allowing a State witness to give her expert opinion on complainant's ability to knowingly consent to sexual intercourse, since there was no basis for her opinion, (5) that the court erred in not granting a mistrial because the serologist's testimony was irrelevant and prejudicial to defendant, (6) that the cumulative errors deprived defendant of a fair trial, and (7) that the court erred in ordering that the remainder of defendant's bail bond be used to reimburse the costs for appointed counsel, where defendant was not present at the hearing and the record indicates that the bond was borrowed from defendant's friends. We affirm in part and vacate in part for the reasons set forth below.

The pertinent facts are as follows: Complainant, a 32-year-old developmentally disabled female with an intelligence quotient (IQ) of 54 and a functional level of nine years and nine months, testified that on the evening of June 30, 1991, defendant entered her apartment by using a passkey. Complainant was in a community living arrangement (CLA) program at the Cornerstone Apartments (the Apartments), a residential living program for developmentally disabled adults. Defendant, a 56-year-old male, was an employee of a community integrated living arrangement (CILA) program, another residential living program at the Apartments. Defendant had worked at the Apartments for approximately a year before this incident occurred.

About 9:15 p.m. on June 30, 1991, after entering complainant's apartment uninvited, defendant took complainant to her bedroom and "had sex" with her against her will. Complainant did not protest, cry out, or physically resist defendant. Complainant reported defendant's actions to the staff at the Apartments the following morning, July 1, 1991.

Complainant was taken to the emergency room at the hospital, where Dr. Siroy performed a rape test on her. The results of these tests revealed that complainant had semen inside her vagina. William Frank, a serologist, testified that his analysis of the semen disclosed that it could have come from any male, given that complainant was a secretor and defendant and she had the same blood type.

The State presented the testimony of other witnesses who established complainant's functioning level and her ability to understand and her knowledge of sexual matters. The State's evidence also revealed that only defendant and another employee, Delores Martin, were on duty at the time the offense occurred.

Defendant testified in his own behalf. He basically denied that he committed the act of sexual penetration, and he stated that he had medical problems which would prevent his performing sexually in the manner described by complainant. Defendant's testimony and the testimony of his witness, Carol Lilly, were contradicted by the State's witnesses.

The jury found defendant guilty of two counts of criminal sexual assault. The court entered judgment on the verdict. Defendant filed a post-trial motion, which was heard at his sentencing hearing.

On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt, as the State failed to prove that complainant was unable to give knowing consent and failed to prove that any force was used or threatened to accomplish sexual penetration. Defendant claims that only complainant and Roseanne Helton (Helton),

a case coordination unit coordinator who has complainant on her case load, provided the evidence that established that complainant was unable to consent and that this evidence was insufficient. With regard to the use of force, defendant argues that the State's evidence revealed that defendant took complainant by the hand and led her to the bed, rearranged her clothing and sexually penetrated her, without struggle or protest by complainant. Further, defendant did not threaten complainant. Defendant contends that this evidence does not establish the use of force necessary to prove him guilty beyond a reasonable doubt of that count of criminal sexual assault. We disagree as to both arguments.

We first address defendant's claim that the evidence failed to establish that complainant was unable to knowingly consent to sexual intercourse. When reviewing the sufficiency of the evidence of a conviction, the standard for review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Bowen* (1993), 241 Ill. App. 3d 608, 609 N.E.2d 346.) In applying this standard, a court of review cannot substitute its assessment of the evidence and the inferences to be drawn from it for that of the trier of fact. (*Bowen*, 241 Ill. App. 3d 608, 609 N.E.2d 346.) Because much of defendant's argument concerns the credibility of the witnesses, we must also keep in mind the principle that it is the trier of fact who determines the witnesses' credibility, and we cannot substitute our judgment of credibility for that of the trier of fact. (*Bowen*, 241 Ill. App. 3d 608, 609 N.E.2d 346.) We find that the evidence was sufficient for a rational trier of fact to find defendant guilty of criminal sexual assault and that complainant was unable to give knowing consent to the act of sexual intercourse.

Complainant's testimony revealed that she did not consent to sexual intercourse with defendant. She testified that defendant did not ask her permission, and in fact, he did not say a word to her. Complainant stated that she did not give him permission to have sex with her and that she did not want to have sex with defendant. Complainant admitted that she did not cry out when defendant violated her. However, a victim's failure to cry out or to escape at the earliest opportunity is not determinative of whether the victim consented to sexual intercourse. (*Bowen*, 241 Ill. App. 3d 608, 609 N.E.2d 346.) Similarly, although complainant did not fight or struggle with defendant, this fact is not evidence that she consented to the sexual act. *Bowen*, 241 Ill. App. 3d 608, 609 N.E.2d 346.

Complainant testified that she had not received any sex education. Additionally, Helton testified that complainant had an IQ of 54 and was mildly mentally retarded, but that she functioned at the nine-year-nine-month-old level. While complainant cooked some meals for herself and could go shopping and received money for her work at the rehabilitation center, the evidence presented at trial created the inference that she had never lived alone. Helton had known complainant for about 12 years and had counseled her regularly regarding her problems in dealing with other people. Helton also testified that, in her opinion, complainant would not understand the long-term ramifications of a sexual relationship; that complainant would not know she could refuse the sexual advances of a staff member; and that a person had to be very basic with complainant.

We also note that with regard to credibility of the witnesses, defendant's testimony was contradicted by Officer McClain's testimony. Defendant did not tell McClain about a prior emergency entrance into complainant's apartment the same day. Defendant testified that he last saw complainant at the end of a fishing trip at 8 p.m. However, in his interview with Officer McClain, defendant stated that he saw complainant when she came to receive her medication at 9 p.m., and that he had a brief conversation with her at that time. Defendant denied telling McClain that he talked with Delores Martin, the other employee on duty that night, around 9:20 p.m. for 15 or 20 minutes.

Defendant also relies on the credibility of Carol Lilly's testimony to show that complainant would defy an authority figure. Lilly testified that complainant did her laundry earlier on the day in question in spite of being told by Lilly to leave the laundry room. Lilly also testified that she told Delores Martin about her problem with complainant over this matter. However, Martin did not recall Lilly complaining to her about complainant's behavior or that there was a problem with complainant about doing her laundry. Thus, Lilly's testimony was contradicted by Martin. This same testimony contradicted defendant's testimony that complainant was upset that day about being told not to do her laundry.

It has been established that to support a guilty verdict based upon the victim's inability to understand the nature of the act and to give knowing consent, the State must show that the victim had insufficient intelligence to understand the act, its nature, and possible consequences. (*People v. McMullen* (1980), 91 Ill. App. 3d 184, 414 N.E.2d 214.) Simply understanding what is involved in an act of sexual intercourse will not be sufficient to meet this standard. (*People v. Velasco* (1991), 216 Ill. App. 3d 578, 575 N.E.2d 954.) In *Velasco*, complainant had an IQ of 53; in *People v. Maloney* (1990), 201 Ill.

App. 3d 599, 558 N.E.2d 1277, complainant's mental age was estimated to be seven years; in *People v. McMullen* (1980), 91 Ill. App. 3d 184, 414 N.E.2d 214, complainant had an IQ of 45 to 54; and in *People v. O'Neal* (1977), 50 Ill. App. 3d 900, 365 N.E.2d 1333, complainant had a mental age estimated to be five years. All of these cases held that the evidence was sufficient to show that the complainants had insufficient mental capacity to consent to intercourse.

Here, complainant's mental disability, her lack of sex education, and her statements that she had sex with defendant against her will, when combined with Helton's testimony regarding her understanding and the contradictions in defendant's and Lilly's testimony, meet the burden of proof required of the State regarding complainant's inability to give knowing consent. Further, defendant was in a position of authority, which would deter complainant from refusing defendant's sexual advances.

The courts have concentrated on the ability of a complainant to understand the consequences of a sexual act. Little if any attention has been given, under section 12—13(a)(2) of the Criminal Code of 1961, to situations where the victim, who might be a normal person, was unable to give knowing consent because of the predicament in which the victim found herself. (720 ILCS 5/12—13(a)(2) (West 1992).) Moreover, the courts have devoted little attention to the state of mind or intent of the perpetrator in relation to the victim's inability to give knowing consent. Perhaps it is time for the courts to broaden the inquiry.

The statute setting forth the elements of a criminal sexual assault requires the State to prove that "the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." (720 ILCS 5/12—13(a)(2) (West 1992).) The crime of criminal sexual assault is committed by the wrongful act of the accused, not the inability of the victim. There is nothing in the phrase "unable to give knowing consent" that indicates that this phrase should be limited to those situations where a victim's ability to understand is in question. The legislature clearly indicated in section 12—13(a)(2) that there are two different ways to commit the crime; the first, of course, is to knowingly have sexual relations with someone who is unable to understand the nature of the act, while the second method is to knowingly have sexual relations with someone who, for any reason, is unable to give knowing consent. Courts should not automatically intertwine these two ways to violate the statute, so that we are left with only one type of victim, the severely developmentally disabled person. We should, therefore, consider all the evidence before the jury, including the accused's perspective as to what he

knew and when he knew it, in assessing the question of complainant's consent.

The jury heard or could have inferred from the evidence the malice of defendant in its consideration of whether complainant gave her knowing consent to the act. The testimony revealed, for instance, that the defendant knew complainant was developmentally disabled and he knew this before entering her room; he knew that he was violating the rules of employment and possibly the criminal law by not obtaining complainant's permission before entering her room (720 ILCS 5/21—3(a) (West 1992)); he knew that he had no direct duties to discharge with CLA residents; he knew that he was in a position of trust and authority in his relationship with complainant; he knew that he had limited contact with complainant and that there was no indication by complainant that she was attracted to him sexually; he made no attempt to obtain verbal permission, nor did he even attempt to persuade the victim to consent; he knew that he was a married man, who should not be having sexual relations with persons other than his wife; he knew that he should not be having sexual relations with anyone, while on duty, considering his responsibility for the safety of the CILA residents under his supervision; he committed the act when he knew no one of authority would be around, indicating that this was a planned encounter and not a spur-of-the-moment act; and, finally, he denied committing the act to the police and the jury, thus evidencing a guilty conscience.

Although each of the aforesaid acts, standing alone, might be insufficient to support a conviction, taken together they are certainly evidence of defendant's malice aforethought. The statute prohibiting criminal sexual assault is directed towards prohibiting a person from taking sexual advantage of another when the other person is unable to knowingly consent to the sexual act. Thus, if the perpetrator knows that another person may be unable, for any reason, to give consent to the sexual act, then the perpetrator should refrain from taking advantage of the situation.

Parenthetically, we realize that it could be argued that section 12—13(a)(1) of the Criminal Code of 1961, concerning the "use of force or threat of force," covers many nonconsensual situations. (720 ILCS 5/12—13(a)(1) (West 1992).) However, it should be noted that "force or threat of force" is defined in the Criminal Code of 1961 as "the use of force or violence, or the threat of force or violence." (720 ILCS 5/12—12(d) (West 1992).) This emphasis on force and violence has physical aspects that do not clearly and satisfactorily cover situations whereby victims accede or give in to sexual advances because of extreme mental coercion brought by defendants. A good example is

the stereotypical case of a widow with five children threatened with eviction in the dead of winter unless she submits to the landlord's sexual advances. Should we find as a matter of law that the widow "consented," because there were no physical threats and the widow had an average IQ?

"Consent" implies a willingness, voluntariness, free will, reasoned or intelligent choice, physical or moral power of acting, or an active act of concurrence (as opposed to a passive assent) unclouded by fraud, duress, or mistake. (See Black's Law Dictionary 377 (4th ed. 1968).) The ability to give knowing consent should involve more than measuring complainant's IQ or ability to physically resist defendant. Knowing consent requires us to examine all of the circumstances to see if defendant knowingly exercised such control over complainant that a trier of fact could find that complainant did not submit to the sexual advances of defendant voluntarily, intelligently, and by an active concurrence.

The flexibility provided by examining defendant's intent, motive, and acts, rather than solely concentrating on demarcating a fine line between complainant's mental ability and nonability to consent, allows us to make what may have previously been considered a contradictory ruling. Complainant could knowingly consent to sexual relations with one person and yet be unable to knowingly consent with another. Complainant has a right, as any citizen, to live a normal life with as minimal governmental intrusion as is possible. Thus, complainant should be allowed to have a relationship with another person without that person being charged with criminal sexual assault. However, our legislature has indicated by section 12—13(a)(2) that when the other person knowingly uses coercion or duress to overcome complainant's freedom and ability to refuse sexual advances, such conduct is prohibited. For these reasons, we believe that the courts should broaden their inquiry in cases involving the inability to give knowing consent to more than just focusing on the IQ or mental ability of the alleged victim. All of the circumstances, including those facts that demonstrate control and its misuse by defendant over the exercise of complainant's free will, are germane to the issue of whether a particular complainant gave knowing consent.

In the case *sub judice*, the jury was justified in finding defendant guilty beyond a reasonable doubt, when the totality of circumstances are considered. These circumstances indicate that defendant knew, intended, and had the capability to take sexual advantage of one who was unable to give knowing consent because of the disparity not only in IQs but also in defendant's ability to use his position of power and authority over complainant.

For the foregoing reasons, defendant's conviction for criminal sexual assault under section 12—13(a)(2) is affirmed, his conviction under section 12—13(a)(1) is vacated, and the remainder of the circuit court's judgment is affirmed.

Affirmed in part; vacated in part.

CHAPMAN and GOLDENHERSH, JJ., concur.