SECOND DIVISION

June 30, 2000

No. 1-98-1128

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

)

)

PETER BEASLEY, ) Honorable

) Thomas Sumner, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court:

Defendant was charged by indictment with six counts of criminal sexual assault. Following a bench trial, the court found 
defendant
 guilty of one count and sentenced him to 10 years incarceration. 

Lareese Spencer has a learning disability
.  She took special education classes all of her life.  She and her daughter relied on Spencer's mother and brother, with whom they lived, for their basic needs.  In 1995 Spencer began taking special 
education classes at Harold Washington College.
  Her aunt, Erma Beasley, arranged to have Spencer frequently meet 
defendant
, Erma's husband, at his work place for tutoring. 
 Defendant
 had sexual intercourse with Spencer regularly during these visits.

On November 8, 1996, while Spencer was sleeping in her bedroom with her five-year-old daughter, 
defendant
 came into the room and again had intercourse with Spencer.  
Several days later, Spencer's daughter
 told Spencer's cousin, Candice, about the event and acted it out. Candice then questioned Spencer, who eventually told her what had happened.
  Spencer went to the hospital, where doctors found no physical damage or signs of venereal disease.  Spencer refused a rape kit, and she told a nurse she would refuse to press charges.  

But the family called police.  After interviewing Spencer the police arrested 
defendant
 and read him his rights.  During the ride to the police station defendant blurted out, "I guess I fucked up. I feel like Mel Reynolds."
  That night he signed a statement an assistant State's Attorney (ASA) wrote out.  In that statement he said Spencer "has always been the outcast of the family because she is slow.
"  He also admitted he
 knew she was mentally handicapped.

Prosecutors charged 
defendant
 with criminal sexual assault in that he had sexual intercourse with Spencer while knowing that she was unable to give knowing consent.  720 ILCS 5/12-13(a)(2) (West 1996).

Defendant moved to quash his arrest and suppress statements.  The ASA who took 
defendant
's statement testified that a detective working on the case told her 
defendant
 wished to remain silent.  Later the same detective told the ASA 
defendant
 changed his mind, and he agreed to discuss the matter with the ASA. 
 Defendant
 presented no other evidence that he ever invoked his right to silence in response to hearing his rights.  The arresting officers testified to the information they received from Spencer and Erma Beasley prior to the arrest.  The court denied the motion to quash the arrest and granted prosecutors a continuance for presentation of the detective as a witness for the motion to suppress statements. 
 Defendant
 sought leave to withdraw the motion to suppress.

The judge suggested that 
defendant
 could instead rest on the motion because he believed he had sufficient evidence to rule.  The judge indicated that he expected the detective's testimony to confirm the ASA's testimony. 
 Defendant
 did not object to the procedure, nor did 
defendant
 claim that the court mischaracterized the expected testimony.  The court denied the motion to suppress.

At trial, Spencer testified that when she went to 
defendant
's work place for tutoring he pulled her by her arm into a little room, where he engaged in sexual activities with her.  When defendant kissed her, Spencer would tell him to stop but he would not stop.
  Although she did not want to meet him at work, she continued to go because she feared her aunt Erma, and she did not want to tell her what 
defendant
 was doing to her.  She spoke to no one about what was happening between her and defendant because he told her that, if she spoke of it, her family would not believe her or would be angry with her. She also feared for her life and her daughter's life
.

When 
defendant
 came to Spencer's bedroom on November 8, 1996, he first tried to push her daughter out of the room, but she came back in.  Defendant unbuttoned Spencer's pants.  Spencer pushed defendant's hand away and buttoned her pants back up.  Defendant again unbuttoned her pants, pulled them down to her ankles and pulled her underpants down.  Spencer pulled her underpants and pants back up and rebuttoned them.  Defendant told Spencer to turn around and put her hands on top of the bed.  Spencer complied, although she did not want to do so.

Defendant took Spencer's pants down again, put his hand on her back and inserted his penis into her rectum.  Spencer did not want defendant to do this and repeatedly told him to stop.  After about 20 minutes defendant removed his penis from her rectum and Spencer pulled her pants up.

Leaverntine Lindsey, another of Spencer's aunts, testified that Spencer was not permitted to take her daughter out alone anywhere because of Spencer's short attention span. For safety reasons Spencer was not allowed unsupervised use of the stove or oven.

The court found that defendant took advantage of a mentally handicapped person – a person who was afraid, not necessarily of him, but of the situation. After a hearing on aggravation and mitigation, the court sentenced defendant to 10 years in prison. 
 Defendant
 moved for a new trial and for a reduced sentence.  He did not challenge the ruling on the motion to quash arrest and suppress statements.  This appeal followed.                        

                                  
 I

Defendant contends that he was denied a fair trial when the court relied on matters outside the record in ruling on defendant's motion to suppress his statements.  He waived the issue by failing to raise it in his motion for a new trial.   
People v. Gard
, 158 Ill. 2d 191, 204, 632 N.E.2d 1026 (1994)
.  Accordingly, we review only for plain error.  See 
Gard
, 158 Ill. 2d at 204.

Defendant
 presented no direct evidence that he invoked his right to silence; instead, he relied solely on the ASA's hearsay testimony that the detective said 
defendant
 initially refused to talk.  The same hearsay evidence equally showed that, after the initial refusal, 
defendant
 changed his mind and agreed to talk.  In light of 
defendant
's offer to withdraw the motion to suppress and the absence of objection to the trial court's statement of the detective's expected testimony, we see no indication that 
defendant
 would have benefitted from a continuance for presentation of the detective's testimony.  Neither can we say that the hearing compromised the integrity of the judicial process.  We find that any error in the trial court's procedure here did not amount to plain error.  See 
Gard
, 158 Ill. 2d at 204-05.  Accordingly, we find admission of the statements insufficient to warrant reversal of the judgment.

II

The principal issue 
defendant
 presents for review is whether the State proved him guilty beyond a reasonable doubt.  Defendant argues that the prosecution failed to establish Spencer's inability to give knowing consent to sexual intercourse.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that a reasonable doubt of defendant's guilt remains.  
People v. Campbell
, 146 Ill. 2d 363, 375, 586 N.E.2d 1261 (1992).  In reviewing the sufficiency of the evidence on appeal, the relevant inquiry is whether, when reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.   
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); 
People v. Young
, 128 Ill. 2d 1, 49, 538 N.E.2d 453 (1989).

Defendant cites 
People v. Blunt
, 65 Ill. App. 2d 268, 212 N.E.2d 719 (1965), in support of his contention that the evidence must show the complainant's mental derangement or deficiency alone rendered the complainant incapable of effective consent.  However, 
Blunt
 arose under the former rape statute, which the legislature repealed in 1984 and replaced with the criminal sexual assault provisions of the Criminal Code in effect at the time of the offense here.  720 ILCS 5/12-13(a)(2) (West 1996).

Commentators criticised the prior statute, which derived from the common law, because it required the prosecution to establish that the sexual contact was without consent and against the complainant's will.  One commentator recommended: recommended:

"[S]ince the basic element of rape is nonconsent and the basic value protected by that element is freedom of choice, then the law should recognize that forms of coercion other than threats or infliction of bodily harm preclude effective consent to intercourse.  

* * *

*** Courts and legislatures should *** structure a standard of nonconsent in rape that would allow the triers of fact to examine the totality of the circumstances of an alleged rape to determine if the complaining witness effectively consented to intercourse with the defendant."

L. Harris,  
Towards a Consent Standard in the Law of Rape
, 43 U. Chi. L. Rev. 613, 643-45 (1976).

The Illinois legislature addressed the consent issue by replacing the rape statute with a statute defining four new offenses called criminal sexual assault.  After passage of the new law, Aaron Jaffe, the state representative who chaired the Rape Study Committee, and Reynold E. Becker, majority counsel to the House Judiciary Committee, cowrote an article in which they explain the legislature's decision to replace the rape statute with the new statute.  A. Jaffe & R. Becker, 
Four New Basic Sex Offenses: A Fundamental Shift in Emphasis
, 72 Ill. B.J. 400 (1984).  

The authors said that under the old law:

"The adult victims of sexual assault were treated differently than other victims of crime.  Illinois statutes and practice had put the onus on the victim in a sex offense rather than on the offender by focusing upon the victim's state of mind in rape prosecutions and compounding the difficulty by requiring proof the crime was committed by force and against the victim's will.  The victim was made to feel that the criminal behavior of the defendant was merely secondary.  We know of no other offense where the state of mind of the victim is ever used to define the elements of the offense."  72 Ill. B.J. at 400-01.

The authors explain that the new statute makes the issue of consent an explicit defense where the evidence must show a freely given agreement to the act of sexual penetration or conduct.  Lack of verbal or physical resistance does not constitute consent.  72 Ill. B.J. at 403.

The court in 
People v. Whitten
, 269 Ill. App. 3d 1037, 647 N.E.2d 1062 (
1995), considered the question of whether a complainant was capable of giving knowing consent, within the meaning of the criminal sexual assault statute, to the sexual activities that occurred.  In 
Whitten
, the complainant's mental disability left her incapable of living alone, but she could shop and cook some meals for herself, and she received money for her work at a rehabilitation center.  She testified that the defendant entered her apartment uninvited by using a pass key, took her to her bedroom and had sex with her against her will.  The complainant did not protest, cry out, or physically resist at the time of the occurrence.  She reported the defendant's actions the next morning.

While we need not consider much of the 
dicta
 in 
Whitten
, we find some of the reasoning persuasive.  The court
 said:

"The statute setting forth the elements of a criminal sexual assault requires the State to prove that 'the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent.' 
[Citation.]
   The crime of criminal sexual assault is committed by the wrongful act of the accused, not the inability of the victim. ***  The legislature clearly indicated in section 12-13(a)(2) that there are two different ways to commit the crime; the first, of course, is to knowingly have sexual relations with someone who is unable to understand the nature of the act, while the second method is to knowingly have sexual relations with someone who, for any reason, is unable to give knowing consent.  Courts should not automatically intertwine these two ways to violate the statute, so that we are left with only one type of victim, the severely developmentally disabled person.  We should, therefore, consider all the evidence before the jury, including the accused's perspective as to what he knew and when he knew it, in assessing the question of complainant's consent.  

* * *

'Consent' implies a willingness, voluntariness, free will, reasoned or intelligent choice, physical or moral power of acting, or an active act of concurrence (as opposed to a passive assent) unclouded by fraud, duress, or mistake. 
[Citation.]
  The ability to give knowing consent should involve more than measuring complainant's IQ or ability to physically resist defendant."  
Whitten
, 269 Ill. App. 3d at 1042-44.

In 
Whitten
, unlike the case at bar, the prosecution presented expert testimony concerning the degree of mental impairment the complainant suffered.  But here the court could rely on its own observations of Spencer during her testimony at trial and the testimony of her aunt concerning the amount of responsibility with which Spencer could safely be entrusted.  Defendant knew complainant had a mental deficiency and he described her as the family "outcast" because of it.  He knew she was incapable of living on her own because of her handicap and that she and her five-year-old daughter depended upon family members for sustenance and support.  He also showed his consciousness of guilt: after his arrest he said, "I guess I fucked up.  I feel like Mel Reynolds."

Spencer testified that she told no one about what defendant did to her when he tutored her because she feared for her life and her daughter's life.  Defendant convinced her that, if she told her family, the family would either not believe her or they would blame her for the incidents.  When the incident in the case at bar occurred, she replaced her pants which defendant had pulled down to her ankles, three times and told him to stop before ultimately surrendering to his sexual advances.  

The testimony indicates that defendant took advantage of Spencer's exceptional vulnerability and his position of authority, as Spencer's uncle and tutor, to overcome her will.  A trier of fact could reasonably conclude that Spencer feared that, if she told her family, her family would abandon her and her daughter.  Defendant knowingly exploited Spencer's limited mental competence and complete dependence on her family to force her into sexual acts and to keep her from revealing his activities.

Spencer's delay in coming forward with her allegations against defendant need not result in the negation of her testimony that she did not consent.  See 
People v. Duplessis
, 248 Ill. App. 3d 195, 199-200, 618 N.E.2d 1092 (1993).  The statute does not require proof that the victim's mental impairment alone rendered her incapable of giving or withholding consent.  The State need only establish that due to circumstances beyond her control she was unable to give knowing consent.  See 
State v. Willenbring
, 454 N.W.2d 268 (Minn. App. 1990).  The evidence supports the trial court's finding that, under the specific circumstances of this case, defendant knew 
Spencer was unable to give knowing consent to the sexual acts.

III

The final issue presented for review is whether the trial court properly imposed a sentence of 10 years' imprisonment for criminal sexual assault.  Defendant contends the sentence was excessive due to his lack of criminal history, his good work record and his support of his wife and children.

The test for determining whether a sentence is excessive is whether the trial court abused its discretion.  
People v. Cox
, 82 Ill. 2d 268, 275, 412 N.E.2d 541 (1980).  In the case at bar the trial court could have sentenced defendant to a term of imprisonment between 4 and 15 years for criminal sexual assault.  730 ILCS 5/5-8-1(a)(4) (West 1996).  The 10-year sentence imposed was within statutory limits, and the record reveals that the court gave careful consideration to the mitigating factors mentioned above as well as the aggravating factors in this case.

Defendant engaged in the sexual activities with Spencer at a time her five-year-old daughter was present.  Defendant knew Spencer was mentally disabled and sought to keep her silent about his activities.  He knew that because of her disability she and her daughter depended entirely on family members for support and sustenance.  He took advantage of this vulnerability by engaging in unwanted sexual activities at her home and at his place of work.  Defendant was given the opportunity to speak at the sentencing hearing, and instead of expressing any regret for his conduct, he stated that the activities were consensual and that complainant knew exactly what she was doing.  The court could reasonably conclude that, by blaming the victim, defendant exhibited an unwillingness to take responsibility for his own actions.

A trial judge is not obliged to recite or assign a value to each factor presented at the sentencing hearing.  
People v. Meeks
, 81 Ill. 2d 524, 534, 411 N.E.2d 9 (1980).  The judge is presumed to have considered all the factors involved in determining the appropriate sentence.  
People v. Carroll
, 260 Ill. App. 3d 319, 350, 631 N.E.2d 1155 (1992).  Nothing in this case rebuts that presumption and the sentence is therefore affirmed.

For the reasons set forth above, defendant's conviction and sentence are affirmed.  Pursuant to 
People v. Nicholls
, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and the relevant statutory provision (55 ILCS 5/4-2002.1(a) (West 1996)), the People of the State of Illinois are awarded costs and fees in the amount of $100 for defending this appeal.  In addition, pursuant to 
People v. Agnew
, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985), the People are awarded an additional fee of $50 for oral argument.  See 55 ILCS 5/4-2002.1(a) (West 1996).

Affirmed.

GORDON and McBRIDE, JJ., concur.