2020 IL App (2d) 170906-U
No. 2-17-0906
Order filed April 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of DeKalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-62 |
| TYLER GREEN, | ) ) ) | Honorable Robin J. Stuckert, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Presiding Justice Birkett and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant was proven guilty beyond a reasonable doubt of criminal sexual assault and predatory criminal sexual assault of a child. The indictment was also legally sufficient on the latter charge. Therefore, we affirm.

¶ 2    Following a bench trial, defendant, Tyler Green, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2000)) and one count of criminal sexual assault (720 ILCS 5/12-13(a)(2) (West 2000)). On appeal, defendant argues that: (1) he was not proven guilty beyond a reasonable doubt of criminal sexual assault; (2) the indictment was legally insufficient on the charges of predatory criminal sexual assault of a child,

because it alleged that defendant was 16 years old during part of the relevant time frame; and (3) the State failed to prove beyond a reasonable doubt that defendant was 17 years of age or older when he allegedly committed predatory criminal sexual assault of a child. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The State filed a 22-count amended indictment against defendant on March 21, 2017. The first 21 counts were identical and charged defendant with predatory criminal sexual assault of a child. They alleged that from "on or about 2001 through 2004," when defendant was 17 years of age or older, he committed an act of sexual penetration with T.D., who was under the age of 13, in that he placed his sex organ in her mouth. The last count alleged that, during the same timeframe, defendant committed criminal sexual assault, in that while knowing that T.D. was unable to understand the nature of the act or give consent, he committed an act of sexual penetration with her by placing his sex organ in her vagina.

¶ 5      Defendant's bench trial took place on March 21, 2017. We summarize the testimony given by T.D. She was born on March 19, 1994, and was 23 years old. Defendant was her older half-brother; they had the same mother. T.D. had three sisters and one other brother. One of her sisters, Ta., was about 12 years older than her and had the same parents as defendant. Her other brother, Tal., was 1½ years older. Another sister, Ti., was about 4½ years younger. Her youngest sister, I., was 10 years younger.

¶ 6      T.D. lived in a house in Cortland, Illinois, from the time she was born until 2003. Tal. and two of her sisters also lived there. Defendant lived there at times but had also been in jail and had lived with a girlfriend. When T.D. was young, various people took care of her, namely her parents, Ta., and defendant. T.D.'s father worked a lot and was not home very often. There were short periods of time when her mother worked. Her mother also kept to herself and slept a lot, and would

just let the children "roam around." After Ta. moved out of the house, defendant often took care of her, even at times when he was living elsewhere. T.D.'s father moved out in December 2000 or 2001.

¶ 7 Defendant had engaged in inappropriate physical contact with T.D. as far back as her she could remember, which was to about age four. It occurred whenever he was babysitting T.D., Tal., and Ti., without parents in the house, and it took place in their mother's bedroom or the bathroom. Defendant made T.D. touch his penis with her hand or mouth.

¶ 8 The last incident occurred when T.D. was seven or eight years old and in second grade, and Ti. was about four years old. T.D. could not have been younger than seven because she remembered that Ti. was old enough to speak in full sentences. T.D. was in the hallway and heard Ti. crying inside their mother's room, with the door shut. Defendant opened the door, had Ti. leave, and told T.D. to come in. Defendant told her to get on the bed and take off her pants, and she complied. He put his penis on her vagina and tried to penetrate her, but T.D. was moving around a lot and crying because it hurt so much. T.D. "was telling defendant that it hurt; wanting him to stop." However, he said that it would be all right and that he had something that would help. He took a condom from their mother's nightstand and put it on. Defendant again put his penis on her vagina, but T.D. was "squirming, moving around" and crying because it "still hurt really bad."

¶ 9 Defendant then told T.D. to go to the foot of the bed and open her mouth, and he put his penis in her mouth. Defendant had her "give him oral" and ejaculated into her mouth. T.D. "freaked out a little bit" because she was not sure what the substance was. Defendant opened the door and said she could leave, and she went into the bathroom and rinsed out her mouth. This being the last incident that T.D. remembered occurring, it was the one that was most clear in her mind. It

occurred near the end of the time that T.D. lived in the Cortland house and closer to when her mother died. It was the only time she recalled defendant touching her vagina.

¶ 10     Another incident occurred when she was in first or second grade. She came home from school and was watching a show that she watched every day that had hamsters. T.D. did not recall if anyone else was home. Defendant came over, asked her to go with him, and took her to the bathroom on the home's main floor. Defendant shut the door and pulled his pants down. He had her put her hand on his penis, under his clothing, and stroke it. She did not remember if he ejaculated. Afterwards, he allowed her to go back to watching television, but her show was over.

¶ 11     T.D vaguely remembered incidents that occurred in his bedroom. She remembered him listening to Lincoln Park and Eminem but did not remember the year or what grade she was in.

¶ 12     When asked how often the incidents occurred, T.D. testified that there were months where it would happen several times and months where it did not happen at all, She testified that she knew "that it happened fairly often because it was never a surprise to [her] when he would ask [her] to go with him. [She] already knew what he wanted." Defendant had two girlfriends at different times, and the sexual incidents did not occur when they were at the house. He made her put her mouth on his penis during the period of time leading up to when her mother died.

¶ 13     T.D. never reported the incidents to anyone because she was scared, embarrassed, and did not want to get into trouble. Defendant told her that if she said anything, he would get taken away, and their mom would be upset with her. Their mother passed away on July 14, 2003, when T.D. was nine years old. The sexual contact ceased afterwards because T.D. moved in with her father, and defendant did not "come around anymore." T.D. still did not say anything because she knew that it would not happen again, and she wanted to move on. T.D. relocated to Missouri in 2009, when she was 14.

¶ 14    At some point when T.D. was living in Missouri, the police contacted her. T.D. told them about a letter that defendant had written to her, but she did not have the letter anymore. She typed a letter to send to defendant but had the police mail it for her because she was scared. T.D. identified a copy of the letter in court.

¶ 15    T.D. admitted that the incidents occurred 15 to 17 years prior, or even longer, and that her memory was fairly cloudy. She could not articulate any specific incidents that occurred when she was five or six years old. T.D. did not remember if defendant was living full-time in the house in the years 2001, 2002, or 2003. Not every incident included her mouth on defendant's penis.

¶ 16    T.D.'s sister Ta. testified that she was 35 years old and was two years and eight months older than defendant. They had the same parents. Ta. described their mother as "fairly hands off" and not "really present." After Ta. moved out of the house in 1997, her mother and stepfather would usually ask defendant to watch the children. Ta. visited defendant in jail in 2009 and told him that she had found out that there had been something "going on" between defendant and T.D. Defendant said that he had molested T.D. from the time that she was two until their mother died. He said that "everyone knew and if [they] didn't know, it was because [they] didn't want to know." He said that he stopped when T.D.'s father "had the kids and he didn't have access anymore." Defendant spent a significant portion of the time between 2001 and 2003 in jail.

¶ 17    The State presented evidence that T.D.'s letter was found inside defendant's cell, and that visitation logs from 2008 and 2009 showed that Ta. visited him several times.

¶ 18    Defendant's certified birth certificate was admitted into evidence. It showed a birth date of April 12, 1984. The parties stipulated to a letter written by defendant to T.D. that was mailed on December 23, 2013, in response to her letter. The nine-page, handwritten letter was dated December 12, 2013. Defendant stated that his abuse of T.D. began when she was 1½ or 2 years

old. He further stated, among other things: (1) "and as your abuser I am fiercely ashamed and pierced with sorrow. There is no excuse for my conduct and more than I have ever meant this sentiment before I earnestly wish I could take back what I've done to you"; (2) "I was wrong in what I did to you!" (3) "I executed sexually perverted fantasies on you"; (3) "I also begged you not to tell mom, a request with which you complied, I assume because of fear"; (4) "My offending against you progressed in severity as time passed"; (5) "I could not escape the tempestuous horror of imagining the terror you must've felt every time our parents would leave you in my care, dreading what you likely expected to take place every time they did"; and (6) "if there was a victim I wish I could remove it is you."

¶ 19    After the State rested, the defense moved for a directed finding.  The defense did not deny that the sexual acts described by T.D. took place. Instead, the defense argued that T.D. did not recollect the incidents with the specificity necessary to prove all 22 counts, that she did not have specific dates or timelines, and the State had not proven that defendant was 17 years old when the acts occurred. The State conceded that it did not present evidence of 21 separate acts of predatory criminal sexual assault of a child, and that it had to limit the indictment to when defendant turned 17, but it argued that it had provided evidence of both crimes. The trial court directed a finding for defendant all on counts other than 1, 2, and 22.

¶ 20    Defendant then testified as follows. He was 32 years old and about 10 years older than T.D. He was incarcerated as a juvenile in 1999 and from February 20 or 21, 2001, through November 6, 2001. He then lived with T.D. and the rest of the family in Cortland until he was arrested on January 16, 2002. He was incarcerated for a total of 7½ months in 2002. In his letter to T.D., he admitted having inappropriate contact with her. The letter stated that it began when he was 11 and she was about 1½, but it did not state when the abuse ended. He had the greatest

opportunity to do so when he was between the ages of 11 and 16. The last abuse would have occurred before November 2000. Defendant denied ever attempting to put his penis in T.D.'s vagina.

¶ 21　The trial court found defendant guilty of the remaining charges, specifically counts 1, 2, and 22. Defendant filed a motion for a new trial on April 13, 2017, which the trial court denied on May 23, 2017. It sentenced him to 12 years' imprisonment on the convictions of predatory criminal sexual assault of a child and 8 years' imprisonment on the conviction of criminal sexual assault, with all of the sentences to be served consecutively. Defendant filed a motion to reconsider the sentence on June 14, 2017, and an amended motion to reconsider on October 6, 2017, which the trial court denied on October 25, 2017. Defendant timely appealed.

¶ 22　　　　　　　　　　　　II. ANALYSIS

¶ 23　　　　　　　　　A. Sufficiency of the Evidence

¶ 24　　　　　　　　　1. Criminal Sexual Assault

¶ 25　Defendant first argues that the State failed to prove beyond a reasonable doubt that he was guilty of criminal sexual assault. Defendant points out that criminal sexual assault, as charged, requires proof that the defendant "commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." 720 ILCS 5/12-13(a)(2) (West 2000). Count 22 alleged that defendant committed an act of sexual penetration with T.D. in that he placed his sex organ in T.D.'s vagina.

¶ 26　Defendant argues that he does not challenge that the physical acts alleged in count 22 took place, but rather argues that the State failed to prove that T.D. was unable to understand the nature of the sexual act or was unable to give knowing consent, and that defendant knew this. Defendant argues that the issue is controlled by *People v. Lloyd*, 2013 IL 113510. In that case, our supreme

court discussed the offense of criminal sexual assault within the statutory framework defining sex offenses in Illinois. *Id.* ¶ 26. It stated as follows. Illinois, like all other states, recognizes that a person must reach a certain age to be able to consent to sexual activity. Thus, minors may give factual consent, but the law treats them as being unable to give legal consent. *Id.* ¶ 27. The prescribed age of consent in Illinois is 17. *Id.* ¶ 30. The legislature has correspondingly created sex offenses that specify the victim's age, the age of the accused, and the type of sexual activity. *Id.* ¶¶ 27-28. "The penalties for violating these age-based statutes fluctuate significantly based upon the offense." *Id.* ¶ 29.

¶ 27     The supreme court continued that, in contrast, the question under section 12-13(a)(2) is the defendant's particular knowledge of the victim's ability to understand the act or give knowing consent, which is determined by the particular circumstances of the case. *Id.* ¶ 33. This determination cannot be based solely on the victim's age, because all minors under 17 are viewed as being unable to consent to sexual conduct. *Id.* The victims in cases prosecuted under this subsection had been found to be unable to understand the nature of the act or give knowing consent because they were severely mentally disabled, very intoxicated, unconscious, or asleep. *Id.* ¶ 39. In these cases, "the evidence was not based solely on [the defendant's] knowledge of the victim's status as a minor." *Id.* ¶ 40.

¶ 28     Defendant argues that here, excluding evidence of T.D.'s young age at the time of the sexual penetration and his knowledge of her age, the evidence was insufficient to sustain the allegation that he knew that T.D. was unable to understand the nature of the sexual act or give knowing consent. He argues that there was no evidence that she was mentally disabled, intoxicated, asleep, or unconscious at the time of the act, "which *Lloyd* found were the only ways in the past that the State has successfully satisfied the elements of" section 12-13(a)(2).

¶ 29 Defendant contends that the appellate court's decision in *People v. Denis*, 2018 IL App (1st) 151892, is flawed and inconsistent with *Lloyd* and the legislative scheme underlying section 12-13(a)(2). In *Denis*, the appellate court concluded that there was sufficient evidence that the defendant, who was 18 at the relevant time, knew that his 7-year-old cousin was unable to understand the nature of the sexual act and give knowing consent. *Id.* ¶ 55. It stated that he had watched her grow up, accompanied her to her bedroom one day, saw her " 'Barbie' " sheets, removed her pants, and penetrated her while she cried. *Id.* ¶ 62. The court stated that the victim "shared the mental age of the victim in *Maloney*, [1] and the record contain[ed] ample support for the finding that [the] defendant sought to take advantage of M.D.'s mental limitations, which due to her age were readily apparent, after becoming aware of them through years-long observation and interaction with her." *Id.* The court concluded:

"Common understanding and basic reason guide our determination that an 18-year-old defendant who, over an extended period of time has the opportunity to observe and interact with his 7-year-old cousin before he commits the sexual act proscribed by the criminal sexual assault statute (720 ILCS 5/12-13(a)(2) (West 1998)), knows that his victim is unable to understand the nature of his sexual act and unable to give knowing consent to it." *Id.* ¶ 64.

¶ 30 Defendant argues that *Denis*'s reasoning cannot be squared with *Lloyd* because the court in *Denis* sustained the defendant's conviction under section 12-13(a)(2) based on the victim being seven years old and the defendant's observation of her child-like behavior. Defendant argues that, in contrast, *Lloyd* requires that the State rely on something "other than evidence that he knew of

_____

[1] *People v. Maloney*, 201 Ill. App. 3d 599 (1990).

the victim's young age." *Lloyd*, 2013 IL 113510, ¶ 40. Defendant argues that *Lloyd* noted that the State relied upon evidence that the defendant knew the victim her entire life and was aware of her young age, and that the State argued that the victim's testimony indicated that she was immature and confused. However, he argues that the court found that such evidence was simply relevant to the victim's age and was invalid as a matter of law to show that the victim was unable to understand the nature of the sexual act or give consent.

¶ 31 Defendant alternatively argues that if *Denis* is viable, the decision does not control here because it is factually distinguishable from the case at bar. Defendant argues that the evidence showed that T.D. was knowledgeable and experienced in sexual activity due to a long history of sexual abuse by him.

¶ 32 On the issue of knowing consent, the State responds that although *Lloyd* listed examples of cases where a victim was unable to provide consent due to a mental incapacity, the court did not provide an exhaustive list. The State cites the definition of consent in *People v. Whitten*, 269 Ill. App. 3d 1037, 1044 (1995), where the court stated that consent "implies a willingness, voluntariness, free will, reasoned or intelligent choice, physical or moral power of acting, or an active act of concurrence (as opposed to a passive assent) unclouded by fraud, duress, or mistake." The court further stated that knowing consent "requires us to examine all of the circumstances to see if [the] defendant knowingly exercised such control over [the] complainant that a trier of fact could find that [the] complainant did not submit to the sexual advances of [the] defendant voluntarily, intelligently, and by an active concurrence." *Id.*

¶ 33 The State argues that it is evident that defendant knew that T.D. was unable to provide consent, in that T.D. had no power or free will to stop the sexual acts from occurring. The State argues that defendant's letter to T.D. showed that he knew that T.D. had no ability to stop him.

The State maintains that defendant had also "groomed" T.D. for many years to engage in sexual conduct with him, creating a power imbalance that was already established on the day of the incident. The State argues that this case is similar to *Denis* in terms of the age difference of the parties, the fact that the perpetrator was an older relative who knew the victim well and was in charge of watching her, and because the victims were unable to identify ejaculate.

¶ 34    The State additionally argues that even if there was insufficient evidence of the inability to knowingly consent, there was sufficient evidence that T.D. was unable to understand the sexual nature of the act. The State maintains that because defendant had to instruct T.D. to remove her clothing and get on the bed, there was a strong inference that she did not know what was happening. The State argues that this is further supported by T.D.'s testimony that she began to squirm and move around when she was being penetrated, that she cried and wanted it to stop, and that she "freaked out" when defendant ejaculated into her mouth because she "wasn't sure what it was."

¶ 35    Last, the State argues that T.D.'s age should be taken into account along with the other evidence, as advocated in the concurring opinion in *Lloyd*. See *Lloyd*, 2013 IL 113510, ¶ 52 (Thomas, J., specially concurring). The State further argues that by restricting the type of evidence that can be used to justify a conviction under section 12-13(a)(2), *Lloyd* essentially limits the State as to what it can potentially charge a defendant, inhibiting a prosecutor's discretion. The State urges us to distinguish *Lloyd* based on T.D.'s very young age, and adopt the concurring opinion's analysis for such young victims.

¶ 36    When examining the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact has the

responsibility to assess witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 37   We conclude that there was sufficient evidence that defendant knew that T.D. was unable to understand the nature of the act and was unable to give knowing consent such that defendant was proven guilty of criminal sexual assault beyond a reasonable doubt. This is true even without considering T.D.'s age or relying on *Denis*.

¶ 38   We agree with the State that although *Lloyd* stated that prior cases upholding convictions under section 12-13(a)(2) involved situations where the victim was mentally disabled, intoxicated, asleep, or unconscious at the time of the act, *Lloyd* did not state that these were the only situations that would satisfy the statute. Indeed, section 12-13(a)(2)'s language contains no such limitations. See 720 ILCS 5/12-13(a)(2) (West 2000). As far as defendant's knowledge that T.D. was unable to understand the nature of the act and give knowing consent, we note that a "defendant's knowledge is generally established by circumstantial evidence rather than direct proof." *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 26. Knowledge "can be inferred from a defendant's acts, statements, or conduct, as well as surrounding circumstances." *People v. Bass*, 2019 IL App (1st) 160640, ¶ 24.

¶ 39   In this case, the evidence showed that defendant was often given the responsibility of taking care of T.D., which indicates that he knew that she was not fully able to take care of herself. On the day of the incident, defendant told T.D. to come into the bedroom and shut the door behind her. He told her to get on the bed and to take her pants off, indicating that T.D. was following

instructions as opposed to taking affirmative actions. Significantly, when defendant put his penis on her vagina to penetrate her, T.D. was moving around a lot and crying, telling defendant that it hurt, again demonstrating to defendant her lack of understanding and consent to what was happening. Moreover, defendant did not even stop at this point but rather tried again with a condom, at which point T.D. was "squirming, moving around" and crying because it "still hurt really bad." Defendant then instructed T.D. to go to the foot of the bed and open her mouth, and he had her "give him oral" before ejaculating into her mouth. T.D. described herself as being "freaked out a little bit" because she was not sure what it was, and her reaction would have shown defendant that she did not understand the nature of the sexual acts in which defendant was engaging. It was only until after defendant opened the door and said that T.D. could leave that she went into the bathroom and rinsed out her mouth, again demonstrating to defendant that she was merely following his instructions.

¶ 40    In defendant's letter to T.D., he directly acknowledged T.D.'s inability to understand what was happening and give consent by describing himself as her "abuser"; saying that he "executed sexually perverted fantasies *on you*" (emphasis added); stating that she followed his request not to tell their mother because of "fear"; and acknowledging "the terror [she] must've felt every time [their] parents would leave you in [his] care, dreading what [she] likely expected to take place every time they did." Viewing all of the evidence in the light most favorable to the State, there was sufficient evidence that defendant knew that T.D. was unable to understand the nature of the act of him putting his penis in her vagina and was unable to give knowing consent to this act, either of which would be sufficient to sustain defendant's conviction of criminal sexual assault.

¶ 41                2. Predatory Criminal Sexual Assault of a Child

¶ 42    We next address defendant's argument that he was not proven guilty of the two counts of predatory criminal sexual assault of a child beyond a reasonable doubt. Defendant argues that the State failed to prove the essential element that he was 17 years of age or older when the acts took place. See 720 ILCS 5/12-14.1(a)(1) (West 2000). He argues that the incidents that T.D. described occurred 15 or more years before the trial, when she was a young child. Defendant notes that she testified that she thought that she was seven or eight years old, but he argues that her memory was admittedly hazy and confused. He argues that she did not testify as to his age during the incidents and was vague and inconclusive regarding her own age at the time, casting reasonable doubt on whether he was at least 17 when the abuse occurred.

¶ 43    Defendant argues that even if T.D. was 7 years old, given that she was born on March 19, 1994, and he was born on April 12 ,1984, there was a period of time when T.D. was 7 and he was 16, namely March 19, 2001, to April 11, 2001. He points out that if he was under age 17 when he committed the acts, he could not be guilty as a matter of law of the two counts of predatory criminal sexual assault of a child.

¶ 44    The State notes that defendant does not contest that he put his penis inside T.D.'s mouth in two separate incidents, but rather argues that the State failed to prove that the incidents occurred when he was 17 years old. The State argues that although there was a 24-day period when T.D. was 7 years old and defendant was 16 years old, defendant ignores the fact that T.D. was adamant that the incident occurred when she was in second grade. The State maintains that, based on T.D.'s birthdate and the relevant statute, she would have started kindergarten in the fall of 1999 (see 105 ILCS 5/10-20.12 (West 2000)) and second grade in the fall of 2001, well after defendant had turned 17. The State further cites defendant's testimony that he was incarcerated as a juvenile from February 2001 through November 2001, and that he lived with the family in Cortland until he was

arrested in January 16, 2002. The State argues that, considering the evidence in the light most favorable to it, it was evident that defendant committed the acts sometime between November 2001 and January 2002, when T.D. was in second grade and defendant was 17 years old.

¶ 45    We agree with the State that there was sufficient evidence that defendant was 17 years old when he placed his penis in T.D.'s mouth, as alleged in the two counts of predatory criminal sexual assault of a child. T.D. specifically testified that she was seven or eight years old and in second grade when the incident in the bedroom occurred, and that she could not have been younger than seven because she remembered that Ti. was old enough to speak in full sentences at the time. Given that Ti. was about 4½ years younger that T.D., there was sufficient evidence that T.D. was at least seven years old.

¶ 46    Defendant's argument that the incidents could have occurred when T.D. was 7 and he was still 16, specifically between March 19, 2001, and April 11, 2001, is not persuasive. As the State points out, defendant himself testified that he was incarcerated from February 20 or 21, 2001, through November 6, 2001, which negates this position. Further, T.D. also testified that he made her put her mouth on his penis during the period of time leading up to when their mother died, and it is undisputed that she died in 2003. Finally, contrary to defendant's testimony that he last abused T.D. in November 2000, Ta. testified that defendant admitted to her that he had molested T.D. from the time that T.D. was two until their mother died. Thus, viewing the evidence in the light most favorable to the State, there was sufficient evidence that defendant was at least 17 years old when the acts underlying the convictions for predatory criminal sexual assault of a child occurred, such that he was proven guilty of these crimes beyond a reasonable doubt.

¶ 47                        B. Sufficiency of the Indictment

¶ 48    We now turn to defendant's argument that the amended indictment charging him with predatory criminal sexual assault of a child was legally insufficient because the statute requires that a defendant be at least 17 years old when the acts were committed (see 720 ILCS 5/12-14.1(a)(1) (West 2000)), but the indictment alleged that defendant was 16 years old during part of the relevant time frame. Defendant notes that if the facts alleged in the charge are accepted as true but do not state an offense, the charge is insufficient as a matter of law. See *People v. Alvarado*, 301 Ill. App. 3d 1017, 1023 (2002).

¶ 49    Defendant cites *People v. Rich*, 2011 IL App (2d) 101237. There, this court held that the indictment was legally defective because the time range alleged included one day where the defendant was 12 years old, but he could not have been convicted of the offenses unless he was at least 13 years old. *Id.* ¶¶ 7-8.

¶ 50    Defendant again points out that the indictment alleged a time period of 2001 to 2004, which would have included several months when he was 16, specifically January 1, 2001, to April 11, 2001. Defendant argues that, similar to the defendant in *Rich*, he could not have been convicted of predatory criminal sexual assault of a child when he was 16, meaning that the indictment did not sufficiently charge him with the crime. He argues that, more compellingly, even if the conduct alleged is accepted as true, it affirmatively demonstrates that he is not guilty of the offenses. Defendant argues that count 1 and 2 were therefore fatally defective and should be dismissed.

¶ 51    Defendant argues that he was prejudiced because the indictment incorrectly notified him that he was guilty of the offenses for acts occurring when he was 16 years old, such that his counsel could not adequately prepare for the charges. Defendant points out that in his motion for a directed finding, counsel argued that the State had failed to present evidence as to a specific time frame or

that defendant was 17 years old when the acts occurred. Defendant again highlights that there was a period of time from March 19, 2001, to April 11, 2001, that T.D. was 7 and he was 16.

¶ 52     Defendant further cites *People v. Tellez-Valencia*, 188 Ill. 2d 523, 526 (1999), where the defendants were charged with and convicted of offenses that were subsequently declared void *ab initio*. The supreme court stated that "the defect caused by charging an offense *based upon a statute not in effect when the alleged offense occurred* is fatal, rendering the entire instrument invalid, and warranting reversal of [the] defendants' convictions." (Emphasis added.) *Id.* at 527. Defendant argues that he was likewise charged with and convicted of conduct that was not an offense, demonstrating prejudice.

¶ 53     The State argues that *Rich* is distinguishable because the indictment here had a range of years, rather than specific dates in which the defendant was under a certain age. The State maintains that *Rich* is also distinguishable because the defendant in that case moved to dismiss the indictment at the trial court level (see *Rich*, 2011 IL App (2d) 101237, ¶ 3), such that the indictment was reviewed on appeal for strict compliance with section 111-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3 (West 2008)). The State argues that, in contrast, where a defendant challenges the indictment for the first time on appeal, the issue is whether the alleged insufficiency prejudiced the defendant in preparing his defense.

¶ 54     The State argues that defendant cannot show such prejudice. It points to the pre-trial hearing on the State's motion *in limine* to admit other crimes evidence, where the following exchange occurred:

> "[Defense Counsel]: Secondly, if [the State is] looking to admit acts committed prior to the date of the allegation, which would be in 2001, *specifically acts committed prior to [defendant's] 17th birthday of April 12, 2001*, they'd be trying to admit acts which

would be charged as juvenile offenses, and I think that's highly inappropriate to use juvenile crimes against an adult that these crimes occurred 17,18 years ago.

\* \* \*

THE COURT: Thank you. [State], can you specifically address the issue regarding juvenile acts that they would be under the age of 17 at the time?

[The State]: Sure. Judge, he would be under the age of 17 at the time. *We set a time frame here where basically the cutoff is in reality when the defendant turns 17.*

\* \* \*

[Defense Counsel]: That's fine, Judge, and *I acknowledge that the proximity in time of these other acts as well as the indictment and what was happening during the time frame of the indictment*. I do believe [it] would be relevant in terms of context. I'm just concerned about them trying to prove crimes that have not been charged.

THE COURT: Based on what the State has said, then, I don't believe that's the intention. I would not allow that to be the intention or argue but just contextual to start out when this happened and giving some time frame for that limited purpose I would allow that testimony." (Emphases added).

¶ 55    The State argues that the above exchange makes clear that defense counsel knew before trial that defendant was being charged with conduct that began on his 17th birthday. The State also highlights that in opening statements, it made clear to the trier of fact that it was "going to prove \*\*\* that after this defendant became 17 years old, which would be on the date of April 12, 2001, he perpetrated acts of sexual penetration on [T.D.] who obviously was under 13 years of age at the time \*\*\*." The State contends that defendant's claim that his counsel was unable to form a defense

is meritless, particularly considering that defense counsel was able to have 19 of the 21 counts of predatory criminal sexual assault of a child dismissed at trial.

¶ 56    A "criminal defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him." *People v. Carey*, 2018 IL 121371, ¶ 20. A charging instrument that fails to state an offense contains a defect implicating due process concerns, and a defendant may attack the defective charge at any time. *Alvarado*, 301 Ill. App. 3d 1017, 1022 (1998). The sufficiency of a charging instrument is a question of law that we review *de novo*. *Carey*, 2018 IL 121371, ¶ 20.

¶ 57    The analysis we apply in determining whether a defendant is entitled to a reversal of a conviction based on a charging instrument error depends on the timing of the challenge. *Id.* ¶ 21. If a defendant challenges the indictment or information before trial in a pre-trial motion, the charging instrument must strictly comply with the requirements of section 111-3 of the Code (725 ILCS 5/111-3 (West 2018)). *Id.* However, if the defendant attacks the charging instrument for the first time on appeal, the charging instrument is sufficient if it notified the defendant of the precise offense with enough specificity to allow the defendant to prepare a defense and plead a resulting conviction as a bar to future prosecution arising out of the same conduct. *Id.* ¶ 22. Stated differently, we consider whether the defect in the charging instrument prejudiced the defendant in preparing his defense, and we may consider the record in making this assessment. *Id.* "If the reviewing court cannot say that the charging instrument error inhibited the defendant in the preparation of his or her defense, then the court cannot conclude that the defendant suffered any prejudice." *Id.*

¶ 58    We conclude that the charging instrument was legally sufficient in this case. *Tellez-Valencia* is inapposite, as the statute there was declared to be void *ab initio* and not legally in effect

at the time of the defendants' crimes, which did not occur here. We agree with the State that *Rich* is also readily distinguishable, as the defendant there sought to dismiss the indictment in the trial court, so the issue for review was whether the indictment strictly complied with statutory requirements. Here, in contrast, defendant first challenged the indictment on appeal, making the issue for review whether the alleged error prejudiced him in preparing his defense. *Carey*, 2018 IL 121371, ¶ 22.

¶ 59     Although the charges for predatory criminal sexual assault of a child alleged that the acts took place between the years 2001 through 2004, they also alleged that defendant was 17 years old at the time. The hearing on the motion *in limine* reflects that the parties readily understood that the State was seeking to find defendant guilty only for acts that took place after defendant turned 17. Defense counsel specifically acknowledged that the other crimes evidence would pertain to events that took place before his 17th birthday (see *supra* ¶ 54), which shows his understanding that the charged crimes pertained only to events that occurred after defendant turned 17. This understanding was further demonstrated during the trial, as defense counsel sought a directed verdict on the basis that the State had not proven that defendant was 17 years old when the acts occurred. Accordingly, defendant has failed to show that he was prejudiced by the alleged error in the indictment, such that he cannot succeed on his claim.

¶ 60                                    III. CONCLUSION

¶ 61     For the reasons stated, we affirm the judgment of the DeKalb County circuit court.

¶ 62     Affirmed.