NO. 4-02-1011

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DONALD E. SHAW,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 01CF1740

Honorable

John G. Townsend,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In March 2002, defendant, Donald E. Shaw, pleaded guilty to criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2000)).  In exchange for his plea, the State agreed to dismiss other charges but made no agreement with defendant regarding what sentence the trial court would impose.  In April 2002, the court sentenced him to seven years in prison.

Defendant appeals, arguing that the trial court (1) erred by failing to conduct an initial inquiry into his 
pro
 
se
 claim of ineffective assistance of counsel and (2) abused its discretion in sentencing him.  We disagree and affirm.   

I. BACKGROUND

In October 2001, the State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2000)) and unlawful restraint (720 ILCS 5/10-3 (West 2000)).  The State later charged him with criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2000)).

Defendant was originally represented by appointed counsel.  However, in January 2002, he retained private counsel to represent him.  

At the March 2002 guilty-plea hearing, the trial court admonished defendant that (1) no agreement existed regarding what sentence the court would impose and (2) if the court accepted his guilty plea, it could sentence him to either probation or between 4 and 15 years in prison.  Defendant indicated that he understood the court's admonitions and without any reservations wished to plead guilty.

According to the factual basis the State provided for defendant's guilty plea, on either August 20 or 21, 2001, Cody C., defendant's then-3-1/2-year-old grandson, told his mother that defendant had touched Cody C.'s penis while Cody C. was visiting his father.  During an August 27, 2001, interview, Cody C. made the following spontaneous statement to a police investigator:  "[Defendant] sucked my wiener, I peed in his mouth, and [defendant] said it was good."  Police also interviewed two other children, both of whom said that defendant had engaged in some sort of sexual conduct with them.   

The trial court (1) accepted the State's factual basis, (2) found that defendant had knowingly and voluntarily entered his guilty plea, and (3) accepted the plea.  

At the April 2002 sentencing hearing, Earl Modesto, a Department of Children and Family Services investigator, testified that on September 11, 2001, he interviewed Lindsay R., defendant's granddaughter and Cody C.'s cousin, who was then almost 10 years old.  She told him that on one occasion during the past year, she was lying in bed when defendant, who was then living with her family, came into her bedroom, put his hand under the bed covers and down her pants, and rubbed her buttocks.  He also rubbed her chest.  Defendant then left Lindsay R.'s bedroom and went outside to smoke a cigarette.  A few minutes later, he returned and "did the same thing" again.  

Urbana police investigator Oscar Gamble testified as to his August 31, 2001, interview of Cody C.  In particular, Gamble stated that Cody C. told him that (1) defendant had "sucked [Cody C.'s] wiener" and (2) "wiener" referred to Cody C.'s penis.  That same day, Gamble interviewed Samantha S., Cody C.'s nearly 10-year-old half-sister, who was not related to defendant.  Samantha S. told Gamble that on one occasion during the summer of 2001, she and Cody C. went to defendant's apartment complex to go swimming.  She and Cody C. later went to defendant's apartment and sat in the living room.  Defendant, who was wearing loose-fitting shorts that exposed his penis, sat on the couch and asked Samantha S. to sit beside him.  She sat on the couch, and defendant asked her to move closer to him.  When she did, he asked her to lie down on his lap as he grabbed her and pulled her head down toward his lap.  Defendant forced Samantha S.'s head down to his thigh before she pulled away from him.  

Defendant stated in allocution that if the trial court sentenced him to probation, he would comply with all probation conditions and "undergo to the best of [his] ability" any recommended treatment.

The trial court considered the presentence investigation report (PSI), which indicated, in pertinent part, as follows:  (1) defendant, who was then 65 years old, had four prior convictions (three deceptive-practices convictions between 1964 and 1970 and a 1996 conviction for driving with a suspended driver's license); (2) defendant's three sisters, who lived in the Arcola area, had offered to let him live with one of them if he was sentenced to probation; (3) defendant served in the United States Marine Corps from 1953 to 1955 and was discharged early due to his low intelligence-quotient score; (4) defendant had a history of medical problems, including heart problems, stomach ailments, depression, and arthritis; (5) defendant had a drinking problem; (6) defendant had been prescribed medication for depression since the 1980s; and (7) a Champaign County Court Services officer had determined that defendant was eligible for intensive probation supervision.  

The trial court also considered the following:  (1) a written victim-impact statement from Cody C.'s mother, in which she indicated that her children have problems with trust, depression, fear, nightmares, and sleepwalking; (2) a written victim-impact statement from Cody C.'s mother on Cody C.'s behalf, in which she indicated that Cody C. was scared for her to leave him and followed her everywhere; (3) Samantha S.'s written victim-impact statement, in which she stated that she was afraid that defendant would victimize her again; (4) eight letters of support from defendant's family and friends, expressing (a) disbelief that defendant could have committed such an offense and (b) love and support for defendant; and (5) defendant's medical records from the Veterans' Affairs Medical Center in Danville, which indicated that between 1996 and 2000, defendant had been treated intermittently for depression with antidepressant medications.  

After considering the evidence, defendant's statement, and counsels' arguments, the trial court sentenced defendant as stated.  In May 2002, defendant filed an amended motion to reconsider his sentence.  On June 14, 2002, defendant personally sent a letter to the court, in which he asked the court to "reevaluate [his] case."  He also wrote, in pertinent part, as follows:  "The sentence imposed on me shocked me, for my attorney gave me a misinterpretation of the seriousness of the felony.  I was 65 [years] old at the time, and my attorney gave me the impression that I would receive [
sic
] probation, o[]ther[]wise I would never have taken the [p]le[a] bargain."  At an August 2002 hearing on defendant's motion to reconsider, neither defendant, counsel, nor the court mentioned defendant's letter.  After considering counsels' arguments, the court denied the motion to reconsider. 

This appeal followed.              

II. ANALYSIS

A. Defendant's Claim That the Trial Court Erred by 

Failing To Conduct an Initial Inquiry into His 

Ineffective-Assistance-of-Counsel Claim 

Relying on 
People v. Krankel
, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), defendant first argues that the trial court erred by failing to conduct an inquiry into his "possible" 
pro
 
se
 claim of ineffective assistance of trial counsel, which he set forth in his June 14, 2002, letter to the court.  He thus requests that this court remand for a hearing on his ineffective- assistance claim.  We disagree.

In 
Krankel
, 102 Ill. 2d at 187, 464 N.E.2d at 1048, the defendant's trial counsel failed to contact an alibi witness or present an alibi defense at trial.  Based upon these failings, the defendant 
pro
 
se
 filed a motion alleging ineffective assistance of counsel.  
Krankel
, 102 Ill. 2d at 187, 464 N.E.2d at 1048.  Upon agreement of the parties that new counsel should have been appointed to represent the defendant on his motion, the supreme court remanded the cause for a new hearing on the motion with newly appointed counsel.  
Krankel
, 102 Ill. 2d at 189, 464 N.E.2d at 1049.  

In 
People v. Pecoraro
, 144 Ill. 2d 1, 15, 578 N.E.2d 942, 948 (1991), the supreme court held that the trial court was not required to address the defendant's 
pro
 
se
 claim of ineffective assistance of counsel in accordance with 
Krankel
 where the defendant had privately retained counsel.  In so holding, the court discussed the pivotal distinction between 
Krankel
 and the case before it, as follows:

"Unlike 
Krankel
, where [the] defendant was represented by an appointed public defender at both trial and post[]trial motions, defendant Pecoraro retained private counsel to represent him at trial and in post[]trial motions.  It was not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by [the] defendant, who was able to, and did, choose counsel on his own accord.  [Citation.]  Moreover, the trial judge could not force [the] defendant to retain counsel other than that chosen by [the] defendant.  [Citation.] [The] [d]efendant and his counsel were the only parties who could have altered their attorney-client relationship. [The] [d]efendant could have retained other counsel to represent him prior to the hearing of his post[]trial motions."  
Pecoraro
, 144 Ill. 2d at 15, 578 N.E.2d at 948.     

The supreme court also noted the following differences between 
Krankel
 and the case before it:  (1) unlike in 
Krankel
, the defendant in 
Pecoraro
 retained private counsel and did not request that he be represented by different counsel; (2) in 
Krankel
, the defendant requested a continuance to obtain new counsel, but the defendant in 
Pecoraro
 did not; and (3) in 
Krankel
, the parties agreed that the defendant should have had different counsel argue his posttrial motion, but no such agreement existed in 
Pecoraro
.  
Pecoraro
, 144 Ill. 2d at 15, 578 N.E.2d at 948.

Pecoraro
 controls our disposition of this issue.  Here, as in 
Pecoraro
, defendant retained private counsel of his own choosing.  Defendant could have ended that attorney-client relationship and obtained new counsel to represent him in postplea proceedings if he so chose.  Contrary to defendant's contention, the mere fact that he obtained the funds to pay for his private counsel from his family does not necessarily mean that he could not have obtained new counsel to represent him during postplea proceedings.  Even if it were true that defendant could no longer afford to hire another private counsel, he could have told the court that he wished to fire his then-counsel and asked the trial court to again appoint counsel to represent him.  However, as in 
Pecoraro
, (1) defendant did not request that he be represented by different counsel; (2) defendant did not request a continuance to obtain new counsel; and (3) the parties did not agree that defendant should have different counsel represent him at the hearing on his postplea motion.  Thus, in accordance with our supreme court's decision in 
Pecoraro
, we conclude that the trial court did not err by declining to conduct an initial 
Krankel
 inquiry into defendant's "possible" 
pro
 
se
 claim of ineffective assistance of counsel.    

We also reject defendant's suggestion that we follow 
People v. Johnson
, 227 Ill. App. 3d 800, 592 N.E.2d 345 (1992), and 
People v. Hayes
, 229 Ill. App. 3d 55, 593 N.E.2d 739 (1992), in which the First District concluded that 
Pecoraro
 was inapplicable.  Both cases
 are factually distinguishable.  In 
Johnson
, 227 Ill. App. 3d at 810, 592 N.E.2d at 352, the defendant (1) filed a disciplinary complaint against his attorney, (2) asked that he be represented by different counsel, and (3) requested a continuance to obtain new counsel.  In 
Hayes
, 229 Ill. App. 3d at 65, 593 N.E.2d at 746, the trial court recognized that retained defense counsel did not understand the law of insanity and did not know who had the burden of proof on the issue.  The First District concluded that the trial court was required to step in because it saw the incompetence, which related to an insanity issue.  
Hayes
, 229 Ill. App. 3d at 65, 593 N.E.2d at 746. 

As a final matter, 
we note that if defendant wants to claim that his privately retained attorney provided ineffective assistance of counsel, he may pur­sue his claim un­der the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2002)).
            

B. Defendant's Claim That the Trial Court Abused Its 

Discretion by Sentencing Him to Seven Years in Prison

Last, defendant argues that the trial court abused its discretion by sentencing him to seven years in prison.  Specifically, he contends that the court (1) ignored mitigating evidence of his military service and depression, (2) improperly gave little credence to the "strong mitigating evidence," and (3) incorrectly found that the public needed protection from him even though the offenses were unlikely to reoccur.  We disagree. 

In 
People v. Kennedy
, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002), the appellate court discussed sentencing as follows:

"A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  [Citations.]  Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case.  [Citation.]  Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight.  [Citation.]  Absent an abuse of discretion by the trial court, a sentence may not be altered upon review.  [Citation.]  If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense."

In addition, if mitigating evidence is presented at the sentencing hearing, this court presumes that the trial court took that evidence into consideration, absent some contrary evidence.  
People v. Anderson
, 325 Ill. App. 3d 624, 637, 759 N.E.2d 83, 94 (2001).  The trial court "is not obliged to recite or assign a value to each factor presented at the sentencing hearing."  
People v. Beasley
, 314 Ill. App. 3d 840, 847, 732 N.E.2d 1122, 1128 (2000).  Further, a defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense.  
People v. Pippen
, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001).

Criminal sexual assault is a Class 1 felony (720 ILCS 5/12-13(a)(3) (West 2000)), for which the trial court could have sentenced defendant to 15 years in prison (730 ILCS 5/5-8-1(a)(4) (West 2000)).  

In sentencing defendant, the trial court stated, in pertinent part, as follows:

"I have considered the evidence introduced today, both in aggravation and in mitigation, and I want to make it clear that I have considered the documentary evidence.  I've considered the [PSI].  I have considered the [victim-impact statements].

I have considered all which is appropriate.  I have considered only that which is appropriate. 

* * * 

***  I have before me the statute which applies to sentencing.  I have considered the factors set forth in aggravation and in mitigation.

* * * 

I am aware that the mitigation urged by [defense counsel] is present here.  Yet, it is always troubling when a person leads essentially a law-abiding life and then serious criminal conduct arises late in life.

While I don't mean to ignore the deceptive[-]practices convictions in the record, since they're all more than 30 years ago, they bear little weight in the sentencing equation.

Clearly, [defendant's] age, his physical condition, the family *** upon whom a hardship would be worked, clearly, there would be family impact as described by [defense counsel] if the sentencing is other than a community-based sentence.

On the other hand, this is a profoundly serious crime.  This crime had a profoundly serious impact on its victim.

*** [T]he other acts of sexual conduct with other children *** is profoundly distressing.

It is profoundly distressing in that it indicates that the conduct [to] which [defendant] pleaded guilty is not just simply some sort of a one-time problem[] but is a problem which manifests itself over children of both sexes and a wide age range.

It is the case that one of the very most, if not the very most, important factors in sentencing is to provide offenders with an opportunity to rehabilitate themselves.

It is correct that probation is a preferred sentence, and I am regarding it as the first and foremost in my mind in considering what sentence is to be imposed here.

It is also the case that another legitimate function of sentencing is to protect the public and to communicate a deterrent message.

Now, I have no belief that anybody in this family would permit [defendant] unimpeded access to minor children after hearing what he had done and understanding his admission to that crime.

Nonetheless, the world is full of children who are not members of this family.

This [d]efendant, having committed a serious crime, having engaged in other sexual conduct with children, seems to me to be a [d]efendant, given all of the circumstances present here, who presents a circumstance where it would deprecate the seriousness of the offense which he committed, would be inconsistent with the ends of justice, and simply would not protect the public if I were to afford him a community-based sentence.

In my view, the appropriate sentence to be imposed upon [defendant] for the crime of which he stands convicted is a sentence of imprisonment."

The record shows that the trial court was fully aware of the circumstances of the crime, the aggravating factors, and the mitigating factors, including defendant's military and psychological history.  In addition, the court explicitly stated that it had considered all mitigating factors.  The mere fact that the court did not specifically recite each one of those factors does not call into question the court's consideration of those factors.  See 
Beasley
, 314 Ill. App. 3d at 847, 732 N.E.2d at 1128 (the trial court "is not obliged to recite or assign a value to each factor presented at the sentencing hearing").  Judged in accordance with the appropriate standard of review, we conclude that the court's sentencing decision did not constitute an abuse of discretion.

In so concluding, we note that defendant essentially asks this court to reweigh the evidence at sentencing and assign greater weight to the mitigating evidence than did the trial court.  This we will not do.  It is the trial court's duty--not ours--to balance the mitigating and aggravating factors and to make a reasoned decision as to the appropriate sentence.  

Last, we reject defendant's contention that the trial court wrongly considered as an aggravating factor that defendant's conduct was likely to recur.  In this regard, we also reject defendant's self-serving claim that no danger of his re-offending exists because his family would cut off his access to children.  The mere fact that defendant's access to his victims up to this point has been through his family members in no way means that he would stop sexually abusing children simply because such access was denied.  Sex offenders are known to have a high recidivism rate (
People v. Diestelhorst
, 344 Ill. App. 3d 1172, 1190, 801 N.E.2d 1146, 1160 (2003)), and the court correctly determined that "the world is full of children who are not members of [defendant's] family."      

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER and APPLETON, JJ., concur.