NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190050-U

NO. 4-19-0050

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DANNY SMITH, | ) | No. 17CF11 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court did not abuse its discretion in sentencing the defendant to 48 years in prison for felony murder.

¶ 2    In September 2018, defendant, Danny Smith, entered an open plea of guilty to first degree murder, and the McLean County circuit court sentenced him to 48 years in prison.

¶ 3    Defendant appeals, arguing his sentence is excessive due to the trial court's improper consideration of factors in aggravation and mitigation. We affirm.

¶ 4                                     I. BACKGROUND

¶ 5                            A. The Charges and Guilty Plea

¶ 6    In January 2017, the State charged defendant by information with 14 counts related to events occurring on December 22, 2016, including home invasion, residential burglary, armed

robbery, aggravated kidnapping, aggravated vehicular hijacking, possession of a stolen vehicle, and first degree murder. Later that month, a grand jury returned bills of indictment charging the same offenses.

¶ 7        On September 4, 2018, defendant entered into an open plea agreement with the State. Pursuant to the agreement, defendant pleaded guilty to an amended charge of first degree murder (720 ILCS 5/9-1(a)(3) (West 2016)) (count XV), alleging that he, without lawful justification and while committing the forcible felony of aggravated kidnapping (*id.* § 10-2(a)(1)), caused the death of Maunds Bryant. In exchange for defendant's plea of guilty to count XV, the State agreed to dismiss the remaining 14 charges against him. Defendant additionally agreed to pay $12,962.50 in restitution to Bryant's mother, Carmelita Magsby.

¶ 8        The State presented the following factual basis in support of defendant's guilty plea:

> "[O]n Friday December 23rd of 2016, the Normal Police Department was called by the Peoria Police Department after a male identified as Roy Magsby reported that he had escaped from the basement of a residence located at 1812 West Kettle Street in Peoria, Illinois[,] after being kidnapped and taken from his residence at 111 West Raab Road in Normal, Illinois. Additional investigation revealed a second kidnapping victim still in the basement of 1812 West Kettle in Peoria, Illinois.
>
> The Peoria Police Department officers discovered a male, later identified as Maunds Bryant, laying on the basement floor with a wound to his head. At that time the defendant *** fled from the residence and was taken into custody by Peoria Police Department officers after a short foot pursuit.

Further investigation revealed that during the evening hours of December 22nd of 2016[,] Roy Magsby heard a knock at his door at 111 West Raab Road in Normal. Magsby did not know the male at the door and asked him what he wanted. The male, later identified by Magsby as this defendant ***, produced a mailing envelope, stated that his mother lived down the street and had inadvertently received Magsby's mail. Magsby told Smith to leave it on the doorstep and leave. Shortly after, Magsby heard the door being forced in and Smith entered the residence. At this same time the defendant was forcing entry in the residence, Bryant, who suffers from ALS, which is otherwise known as Lou Gehrig's Disease, fell forward in the hallway while trying to get away from the front of the residence and moving away from the home intruder, striking his head on the floor, causing a laceration to his left eyebrow area that began to bleed profusely. Bryant would later die from this wound on December 25th, 2016.

An autopsy revealed a severe brain bleed caused from the fall and impacting his head on the floor.

Due to his ALS, Bryant has [*sic*] lost functional use of his arms and was unable to catch himself during the fall.

Defendant *** then bound Magsby with handcuffs and held Magsby and Bryant until Magsby's wife, who is also Bryant's mother, Carmelita Magsby, returned home. Among other personal property the defendant took cash from Roy Magsby's wallet and their personal cellphones.

[Defendant] loaded Roy Magsby and Maunds Bryant into Carmelita's gray [J]eep. The defendant ordered Carmelita to stay behind, told her that someone was

watching the house and ordered her not to call the police or he would harm Roy and Maunds and demanded that Carmelita get him [$]20,000 for the release—for the release of Roy and Maunds.

Carmelita stated to the police that in July she had won approximately [$]420,000 in the state lottery, and the defendant must have known this somehow.

Defendant *** also provided her with a black ZTE brand of prepaid cellular telephone to call him once she had withdrawn the money from the bank the next morning. This cellphone was recovered by the Normal Police Department from her residence.

[Defendant] then drove Roy Magsby and Maunds Bryant to 1812 West Kettle Street in Peoria. Once Normal police officers were notified of the kidnapping, they responded to 111 West Raab Road where they discovered the front door had been forced in.

Carmelita was discovered at the residence waiting for a call from the defendant. During the home invasion the defendant poured bleach all over the first floor of the residence in an effort to cover up his tracks. When the defendant walked through the bleach, however, shoe ware impressions were left in the drying bleach. The shoe impressions made from Nike Air Jordan shoes matched that of the defendant ***, who was wearing Nike Air Jordan shoes at the time of his arrest.

Furthermore, black duct tape and packaging tape were found inside the 111 West Raab Road residence by the Normal Police Department upon the search of the residence.

Carmelita and Roy Magsby also indicated to the police that the defendant *** told them he had been watching their house for a couple weeks.

When the Peoria Police Department evidence technicians processed the crime scene at 1812 West Kettle in Peoria, they discovered several items of potential evidence, including a bandana, sock, tape, and handcuffs used to bound and gag Magsby during the kidnapping. Also discovered was Carmelita's gray [J]eep under a tarp, in addition to a mailing envelope addressed to Roy Magsby, which was located in an outside garbage can outside 1812 West Kettle in Peoria.

Additionally, zip ties were discovered in a garbage can[.] *** Further investigation also revealed that 1812 West Kettle Street was not the residence of the defendant ***. Rather it belonged to an individual that [*sic*] allowed numerous individuals to come and go from the property, and the owner of the residence was not aware that [defendant] was using the address to commit the crime.

The residence located at 2418 West Proctor in Peoria, Illinois, is the address the defendant had listed with the Illinois Secretary of State as being his residence.

On December 28th of 2016[,] the Normal Police Department executed a search warrant at the defendant's residence at 2418 West Proctor in Peoria. Located inside the residence at this time were numerous items of evidentiary value, including in the defendant's bedroom in the garbage were found two empty prepaid phone boxes, which the Peoria Police Department confirmed one of the boxes matched the prepaid phone located on defendant *** at the time of his arrest and the other was the box for the black ZTE brand cellular telephone that the defendant

gave to Carmelita Magsby to use to contact him once she had obtained the ransom money.

Also found in the defendant's trash was black duct tape matching that used, keys to the novelty handcuffs recovered by the Peoria Police Department at 1812 West Kettle Street, and then three empty bandana packages and an Auto Zone receipt for a car cover used to cover the car taken from Carmelita Magsby."

¶ 9 Defendant stipulated to the factual basis, and the court accepted defendant's guilty plea.

¶ 10 B. Sentencing Hearing

¶ 11 In November 2018, defendant's case proceeded to a sentencing hearing.

¶ 12 1. *Evidence and Arguments*

¶ 13 As evidence in aggravation, the State presented six victim impact statements that were admitted as exhibits. Statements from Roy and Carmelita Magsby (Maunds's mother and stepfather), and Juanita Bryant (Maunds's sister), were read into the record.

¶ 14 In mitigation, defendant presented (1) three letters of support from friends and family members, (2) certificates showing defendant's completion of several programs while in jail, and (3) a report by and *curriculum vitae* for Dr. Thomas Young, a defense expert, who reviewed the autopsy report of Maunds Bryant.

¶ 15 During its argument, the State described the events in this case as like "a scene out of a horror movie." The State specifically noted Maunds's disability and "the fact that he spent some of his last conscious hours a captive bleeding on a dark basement floor." The State additionally emphasized (1) defendant's prior criminal history, which included a 2009 violent felony from Tennessee, (2) that defendant committed the offense in this case while he was on

probation for felonies committed in Tennessee, (3) that a "serious" sentence was necessary to deter others, and (4) defendant's acts were premeditated and thoroughly planned. The State argued defendant should be sentenced to 58 years in prison.

¶ 16        Defendant's counsel argued that under the felony murder doctrine, defendant necessarily lacked the intent to kill Maunds. Counsel further noted that reports from the paramedics indicated that at the time Maunds was transported for medical treatment, "Maunds was consci[ous], alert, oriented; that he had regular breathing, non-labored, strong regular pulse, and they had suctioned some bright red blood from his mouth," but there was "no indication that it was bleeding profusely." Defense counsel further explained that although it was true defendant had three prior felonies, all three had arisen out of the same 2009 incident in Tennessee. Defense counsel further disputed the State's assertion that defendant had committed the offense in this case while on probation for the Tennessee case. According to records defense counsel obtained from the Montgomery, Tennessee circuit court, defendant had completed his probation successfully. Defense counsel emphasized defendant was only 30 years old and that he had taken responsibility for his actions. Regarding defendant's rehabilitative potential, counsel stated defendant had been productive in the two years he had been in custody, completing his GED, food handling and life skills courses, and moral reconation therapy (MRT). Defense counsel also indicated defendant suffered from opiate addiction. Defense counsel argued for a sentence of 20 to 25 years in prison.

¶ 17        Following arguments, defendant made a statement in allocution. Defendant apologized to Bryant's family and expressed remorse, asking the trial court to consider his potential for change in fashioning his sentence.

¶ 18                        2. *Sentencing Decision*

¶ 19        The court then issued defendant's sentence stating, in part, as follows:

"The court understands the evidence, the positions of the parties. I've considered the factual basis, the Presentence Investigation Report, the history, character, and attitude of the defendant ***, the evidence and arguments, statement in allocution. The court has considered the relevant statutory factors in aggravation pursuant to 735 ILCS 5/2-3.2 and the relevant factors in mitigation pursuant to 730 ILCS 5/5-3-5.1.

* * *

With regard to factors in mitigation, I do—I have read the letters from the individuals who have written on your behalf. And I understand the person that they knew you to be, and I am considering that here in the sentence that's being issued here today. They certainly have written about an individual who is much different than the facts that the court has before it with regard to this particular incident that you pled guilty to. And, so the court is considering that.

I'm considering the fact that since you have been incarcerated, there's been a number of programs that have been completed that the court is considering as well. You have taken advantage—and I would agree with [defense counsel] that you have taken advantage of the programs downstairs in terms of attaining your GED, in terms of completing MRT, Life Skills. Those are all, court finds, positives in what it's considering here.

Unfortunately, with those positives come a number of negatives as well. And those are the factors in aggravation. And there's a number of them in this case.

The conduct that brings us here together today caused and threatened serious physical harm, threatened serious harm. And the court is not ignoring that. The court can consider the factual basis. And, frankly, the factual basis is very aggravating, and the court believes that to be true. There is a history of prior criminal activity. And as [defense counsel] argued, sometimes the court might see that a little different than what the general public sees because we deal with that on a daily basis. We're here on your fourth felony offense. And the court certainly sees that on a regular basis in terms of multiple felonies with people who come before it. However, I'm not ignoring it.

We're here on a fourth felony offense. There were three prior opportunities here to turn it around, especially while you were on probation. That's the purpose for probation; to cure the conduct that got you here in the first place. And you did not take advantage of that. And that's aggravating to the court that you had that opportunity and it was not taken advantage of.

There's been mention about deterrence. And this court certainly would agree with the State on this; that any sentence the court issues is necessary to deter others from committing the same offense. That probably goes without saying. But especially in this type of situation, the court, nor society will accept this type of behavior under any circumstances. And the court is certainly considering the deterrence factor.

The offense, that was committed against a person physically handicapped. And I understand [defense counsel] is saying that you didn't know the person was physically handicapped. However, I look at the doctor's report that is marked as

Defendant's Exhibit No. 3 and in the first paragraph of Dr. Young's report, he certainly describes an individual who can't talk, who has nerve and muscle dysfunction, who has problems lower and upper neurologically. I heard the testimony or the victim impact statements of Mr. Bryant's family who indicate the condition he was in. And it's difficult for the court to believe that there was not some realization here that Mr. Bryant did not suffer from a physical disability. And that should have been known or was known to you at the time this offense took place. And the court sees committing an offense against a person who is physically handicapped—these are the most vulnerable members of society, and they demand the court's protection when looking at these situations and issuing a sentence.

The court has looked at your prior record with regard to whether you were on probation. You were placed on probation in Montgomery, Tennessee on February 23rd, 2009. It was an eight-year term. And this offense was committed on December 22nd, 2016. At least according to the record, you were still on probation at the time this offense took place. Again, probation is an opportunity for you to fix the conduct that got you into probation in Montgomery, Tennessee, and it was not done.

This court—you asked me to consider the person you can be, and the court always does that. The court always considers rehabilitative potential of the individual. But the court also considers the actions that got somebody here in the first place. The court sees the actions in this case as significantly aggravating. The court finds a number of aggravating circumstances in this particular case.

The court will issue a sentence of court costs plus 48 years in the Illinois Department of Corrections. Restitution per the addendum or per the agreement, $12,962.50."

¶ 20    In November 2018, defendant filed a motion to reconsider his sentence, arguing the sentence imposed by the court was excessive. Following a December 2018 hearing, the court denied the motion.

¶ 21    This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    Defendant argues his 48-year sentence for felony murder is excessive due to the trial court's improper consideration of factors in aggravation and mitigation. Specifically, defendant argues the court misinterpreted his criminal history, gave improper weight to the deterrence factor, and failed to adequately account for his rehabilitative potential.

¶ 24                            A. Standard of Review

¶ 25    "The Illinois Constitution provides penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810 (citing Ill. Const. 1970, art. I, § 11). "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *Id.*

¶ 26    "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). "The *** court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility,

demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). "It is also required to consider statutory factors in mitigation and aggravation; however, 'the court need not recite and assign a value to each factor it has considered.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19, 143 N.E.3d 794 (quoting *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494). "[I]f mitigating evidence is presented at the sentencing hearing, this court presumes that the trial court took that evidence into consideration, absent some contrary evidence." *People v. Shaw*, 351 Ill. App. 3d 1087, 1093, 815 N.E.2d 469, 474 (2004).

¶ 27        "On review, the sentence imposed by the trial court will not be reversed absent an abuse of discretion." *Pina*, 2019 IL App (4th) 170614, ¶ 20. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *Fern*, 189 Ill. 2d at 54).

¶ 28                                    B. This Case

¶ 29                                    1. *Criminal History*

¶ 30        Defendant first argues the trial court misapprehended or gave improper weight to his criminal history when it stated defendant had "three opportunities to turn it around" regarding his sentence to probation for three felonies in Tennessee. We disagree.

¶ 31        As part of his argument, defendant asserts the trial court "misinterpreted" his criminal record and, in fact, he "received only *one* eight-year term of probation that covered all three felony convictions[ ]" relating to the Tennessee incident. (Emphasis in original.) However, the presentence investigation report (PSI) does not support defendant's contention. The PSI reflects defendant actually received *three separate* probation sentences of one, three, and eight

- 12 -

years, for the three felony convictions in Tennessee. We also disagree with defendant's claim that the court's reference to "three opportunities to turn it around" "necessarily implies that the [court] treated [defendant's] previous felony convictions as arising from three separate incidents." Rather, the court's statement reflects its recognition that every sentence of probation offers a defendant the opportunity to demonstrate his ability to comply with its terms and conditions. Defendant's attorney acknowledged the failed opportunity at the hearing on defendant's motion to reconsider sentence, saying, "So really, yes, he did screw up probation." When viewed in context, the court's statement demonstrates that it properly concluded defendant's failure to take advantage of the opportunities provided to him during the eight-year period of probation constituted an aggravating factor.

¶ 32       Moreover, the trial court clarified at the hearing on defendant's motion to reconsider his sentence that his criminal history was only "a factor" among other factors it considered in fashioning its sentence. Specifically, the court stated, "[T]he deterrence, the physical handicap ***, on probation at the time of the offense, the custody infractions, the threatened physical harm, the nature and circumstances of the offense, that's why the Court came to the decision it did with regard to the sentence that it issued." The record shows the court understood the nature and circumstances of defendant's convictions and sentences in Tennessee, and that in any event, it does not appear it gave undue weight to that criminal history in fashioning its sentence. We conclude the court's consideration of defendant's criminal history was proper and did not constitute an abuse of discretion.

¶ 33                                    2. *Deterrence*

¶ 34       Defendant next argues the trial court gave improper weight to the deterrence factor. Specifically, defendant argues "deterrence is nearly impossible to achieve in this case" because

"[n]ot only did [defendant] not intend to cause Maunds'[s] death, but *** no person in [defendant's] position could have foreseen that his actions would eventually lead to Maunds'[s] death." We disagree.

¶ 35    "Felony murder derives its mental state from the underlying intended offense." *People v. Jones*, 376 Ill. App. 3d 372, 387, 876 N.E.2d 15, 28 (2007). "Felony murder seeks to deter persons from committing foreseeable felonies by holding them responsible for murder if a death results." *Id.* Although the felony murder doctrine has an underlying policy goal of deterrence, a sentencing court is also required to consider, as a statutory aggravating factor, whether a longer prison sentence is necessary to deter others from committing the same offense. 730 ILCS 5/5-5-3.2(a)(7) (West 2018).

¶ 36    Here, we find the trial court properly considered the deterrence factor in fashioning its sentence. The factual basis established defendant's actions in carrying out the predicate felony of aggravated kidnapping were premeditated and thoroughly planned. First, defendant surveilled the Magsbys' home for several weeks prior to the kidnapping. He also purchased various items to carry out the offense, such as prepaid mobile phones, duct tape, zip ties, handcuffs, face coverings, and a cover to conceal Carmelita's stolen vehicle. The factual basis further reflected that, during defendant's forced entry into the home, Maunds was knocked to the floor when defendant forced his way inside, causing a head injury that ultimately resulted in Maunds's death. Moreover, despite apparent indications of Maunds's ALS and head injury, defendant followed through with the kidnapping and transported him and Magsby to the house in Peoria rather than seeking medical attention for him. The court, at the sentencing hearing, noted its skepticism that defendant did not notice Maunds suffered from a physical disability. While defendant may not have intended for Maunds to die, his actions in carrying out the aggravated kidnapping were calculated and clearly

- 14 -

deterrable. Defendant's forced entry foreseeably led to Maunds's head injury which, left untreated, ultimately resulted in his death. Thus, we find the court's consideration of the deterrence factor was proper and did not constitute an abuse of discretion.

¶ 37                                3. *Mitigating Factors*

¶ 38            Finally, defendant argues the trial court failed to give proper weight to the mitigating factors at sentencing, including defendant's statement in allocution, completion of educational programs while in jail, and drug addiction. We disagree.

¶ 39            Here, the record shows the trial court fully considered the applicable mitigating factors in this case. The court specifically stated it had considered letters written in support of defendant and that it found defendant's completion of his GED, MRT, and Life Skills courses while in jail to be "positives." The court also stated it considered defendant's statement in allocution and his rehabilitative potential. Defendant presents no evidence indicating the court failed to adequately consider these factors.

¶ 40            Additionally, "the trial court is not required to view drug addiction as a mitigating factor," and "a history of substance abuse is a 'double-edged sword' that the trial court may view as a mitigating or aggravating factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105, 126 N.E.3d 703 (quoting *People v. Mertz*, 218 Ill. 2d 1, 83, 842 N.E.2d 618, 663 (2005)). Although the court in this case did not specifically mention defendant's arguments regarding addiction, it did indicate it had reviewed the PSI, which detailed defendant's struggles with opiate addiction. In the absence of any evidence that the court improperly considered defendant's drug addiction, we presume the court adequately considered it at sentencing. See *Shaw*, 351 Ill. App. 3d at 1093.

¶ 41            In summary, the record shows the trial court carefully weighed all of the aggravating and mitigating factors and fashioned a sentence that fell well within the statutory range

for the offense. In light of the especially troubling facts of this case, we conclude defendant's 48-year sentence for felony murder was not manifestly disproportionate to the nature of the offense.

¶ 42                                         III. CONCLUSION

¶ 43            For the reasons stated, we affirm the trial court's judgment.

¶ 44            Affirmed.