NOTICE

Decision filed 06/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180372-U

NO. 5-18-0372

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Gallatin County. |
| v. | ) ) | No. 18-CF-17 |
| GEORGE A. BIVENS, | ) ) | Honorable Thomas J. Foster, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant was convicted of three counts of predatory criminal sexual assault of a child and sentenced to three 22-year terms in the Illinois Department of Corrections to be served consecutively, with a 3-year term of mandatory supervised release. The defendant did not file a posttrial motion challenging the sentence but argued that this court should consider the trial court's failure to consider any mitigation presented during the sentencing hearing under the doctrine of plain error. We affirm the sentence of the trial court, holding that the record supports a finding that the trial court did not fail to consider mitigation, therefore no error occurred.

¶ 2    Following a jury trial held on June 12, 2018, the defendant, George A. Bivens, was found guilty of three counts of predatory criminal sexual assault of a child in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (Criminal Code) (720

1

ILCS 5/12-14.1(a)(1) (West 2004), now codified as 720 ILCS 5/11-1.40(a)(1) (West 2018)). The defendant was sentenced to three consecutive 22-year terms in the Illinois Department of Corrections for each offense, for a cumulative 66-year sentence. The defendant now appeals and challenges his sentence.

¶ 3                                    I. BACKGROUND

¶ 4     On March 14, 2018, the State filed an information, charging the defendant with three counts of predatory criminal sexual assault of a minor, J.B., in violation of section 12-14.1(a)(1) of the Criminal Code. As the defendant solely challenges his sentence, we recite only those facts necessary to decide this appeal.

¶ 5     The defendant proceeded to jury trial on the State's fourth amended information, filed June 7, 2018, charging three counts of predatory criminal sexual assault of a minor, J.B. The fourth amended information alleged that, between March 1999 through March 2004, the defendant, while 17 years of age or older, committed three separate acts of sexual penetration with J.B., a minor under the age of 13, in that he placed his finger in the vagina of J.B. on one occasion and placed his penis in the vagina of J.B. on two separate occasions. Pursuant to section 12-14.1(b)(1) of the Criminal Code, predatory criminal sexual assault of a child was a Class X felony with a sentencing range of 6 to 30 years' imprisonment.[1] 720 ILCS 5/12-14.1(b)(1) (West 2004).

_____

[1]The current sentencing range for predatory criminal sexual assault is between 6 to 60 years' imprisonment. 720 ILCS 5/11-1.40(a)(1), (b)(1) (West 2018). The defendant's brief cites this as the potential sentencing range in this case; however, at the time the offenses were committed, between 1999 and 2004, the nonextended term sentencing range was between 6 to 30 years' imprisonment. 720 ILCS 5/12-14.1(b)(1) (West 2004). A defendant may elect between sentencing laws in effect at the time of the crime's commission and the law in effect at the time of sentencing. *People v. Hollins*, 51 Ill. 2d 68, 71-72 (1972). The defendant elected the more favorable sentencing provision in effect during the time of the

¶ 6     The defendant's jury trial began on June 12, 2018. J.B. testified that on three separate occasions, all while she was under 13 years of age, she was sexually assaulted by her stepfather,[2] the defendant. J.B. testified that on one occasion when she was eight years old and in trouble for not cleaning her room, the defendant pulled down her pants and spanked her, then inserted his index finger inside of her vagina. When J.B. was nine years old, she again got in trouble for disturbing the defendant during a party, and the defendant spanked J.B. in her bedroom. He again placed his finger in her vagina and on this occasion also placed his penis in her vagina. J.B. testified that she called her grandmother who came to pick her up and she went to her grandmother's house. On another occasion, when J.B. was 12 years old, the defendant came into her room, slapped her, pulled down her underwear, and placed his fingers inside of her vagina. The defendant then removed his fingers and placed his penis inside of her vagina. J.B. testified that during all of these incidents the defendant was 17 years older than her, and thus, over the age of 17.

¶ 7     J.B.'s sister testified that J.B. told her what had happened in August of 2017. J.B.'s grandmother testified that she recalled an incident where J.B. called her to pick her up. When her grandmother arrived at the defendant's trailer, J.B. came out of the closet where she was hiding, was crying, and grabbed ahold of her grandmother. They went

commission of the offenses. Therefore, the defendant was subject to between 6 to 30 years' incarceration in the Department of Corrections.

    [2]J.B. testified that the defendant was her adoptive father but referred to him during other parts of her testimony as her stepdad. She was asked to clarify and explained that both stepdad and adoptive father referred to the defendant.

back to her grandmother's house. The defendant called the police who returned J.B. to the defendant's trailer. The State rested and the defense did not present evidence.

¶ 8 On June 13, 2018, the defendant was convicted of all three counts of predatory criminal sexual assault. The defendant's sentencing hearing was held on July 16, 2018. At the sentencing hearing the trial court stated on the record that it had and would continue to consider the evidence received at trial. The trial court acknowledged that two presentence investigation reports (PSI) were filed by a probation officer on July 9 and July 11, 2018. Both the State and the defendant acknowledged receipt of the PSI and had no requested amendments, corrections, or deletions. The trial court stated on the record that it had and would continue to consider the PSI. The trial court stated on the record that it had considered the financial impact of incarceration and would consider evidence and information offered by the parties in aggravation and mitigation.

¶ 9 The PSI included information that the defendant was raised by a family of heavy drinkers and was physically abused. The defendant had completed his GED while in federal prison, had learned the plumbing trade, and had a work history dating back to 1996. The defendant also had issues with substance abuse. The defendant had a criminal history that consisted of nonviolent drug and traffic offenses, with multiple felonies beginning when he was 19.

¶ 10 The State presented evidence in aggravation. The State called J.B.'s uncle to testify. The uncle testified that J.B. had suffered emotional deterioration since her childhood. He had noticed that she was an introvert, avoided any type of confrontation, and was scared of men. He testified that J.B. had been hospitalized on multiple occasions

and continued to see a therapist regularly due to the defendant's actions. He testified that J.B. had resorted to self-harm through cutting as a coping mechanism and had multiple scars on her arms. Additionally, he testified that J.B. had tried to commit suicide on four different occasions. The uncle then read J.B.'s victim impact statement to the trial court. The statement explained in J.B.'s words how the defendant's actions had ruined J.B.'s childhood. The statement recounted the anxiety and depression suffered by J.B. because of the defendant's abuse. The statement also outlined J.B.'s fear of men and how it was nearly impossible for her to trust a man or to be in an intimate relationship with a man. J.B.'s statement advised the trial court of her prior suicide attempts and how self-harming had helped her to cope with the pain of her past abuse.

¶ 11    The defendant offered testimony from his fiancée as evidence in mitigation. The defendant's fiancée testified that the defendant had always treated her well and that she had never had any issues with his attitude. The fiancée also testified that the case had completely affected the defendant's demeanor and had left him heartbroken. The defendant was given the opportunity to make a statement in allocution. The defendant discussed some of his previous mistakes and how he regrets making those decisions; however, the defendant denied committing the offenses for which he was convicted.

¶ 12    The State argued that there were no mitigating factors applicable to this case and that a lower sentencing range would not be appropriate. The State pointed out the defendant's criminal history, including multiple felony convictions, the most recent resulting in a 151-month sentence in the Federal Department of Prisons. The State asked the trial court to sentence the defendant to three consecutive 25-year sentences.

¶ 13    After the State made its recommendation, counsel for the defendant argued that the defendant was a different person on the date of sentencing than he was at the time of the offenses. Defendant's counsel argued that his criminal history involved drugs and that the defendant would benefit from drug counseling while incarcerated. The defendant contended that an applicable statutory factor in mitigation applied, that it was unlikely he would ever commit such a crime again. In support of this mitigation, the defendant relied on the fact that the last incident occurred nine years prior to the defendant no longer being in contact with J.B. and that he was no longer around J.B. Defendant's counsel argued that the trial court should be lenient and sentence the defendant to the statutory minimum of six years with a recommendation of substance abuse treatment.

¶ 14    After both parties made their sentencing recommendations, the trial court stated that it considered all of the items it had previously mentioned as required by section 5-4-1 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4-1 (West 2004)). This would have included the aggravating and mitigating factors set forth in sections 5-5-3.1 and 5-5-3.2 of the Unified Code (*id.* §§ 5-5-3.1, 5-5-3.2). The trial court stated that, with regard to the factors in mitigation set forth at section 5-5-3.1, "the [c]ourt has looked at those factors, considered them." The trial court did not find any of those factors to be applicable to the present case.

¶ 15    With regard to the factors in aggravation, the trial court found several statutory factors in aggravation to be applicable to the defendant. These included (1) the defendant's conduct caused or threatened serious harm, (2) the defendant had a history of prior delinquency or criminal activity, (3) the sentence was necessary to deter others from

6

committing the same crime, and (4) the defendant held a position of trust or supervision over the victim because he was a family member, the adoptive father of the victim, and the victim was under 18 years of age when the three offenses in counts I, II, and III of the fourth amended information were committed. The trial court discussed the defendant's criminal history, noting that it began when the defendant was about 19 years old with his first felony, and "that has pretty much continued on to date, concluding with the Federal Court sentencing for the offense of possession of an illicit chemical knowing it would be used to manufacture a controlled substance."

¶ 16    The trial court discussed the defendant's eligibility for an extended term sentence, finding that the defendant was eligible under section 5-5-3.2(b)(3) of the Unified Code (*id.* § 5-5-3.2(b)(3)) because he committed a felony against a person under 12 years of age. Ultimately, the State had not requested an extended term sentence, and the trial court did not sentence the defendant to an extended term sentence.

¶ 17    Finally, the trial court noted that the crimes committed by the defendant were, "other than first degree murder, the most heinous, and terrible, and egregious offenses that you can commit." The defendant was convicted of three Class X felonies which were subject to mandatory consecutive sentencing pursuant to section 5-8-4 of the Unified Code (*id.* § 5-8-4). The sentencing range for the Class X felonies was not less than 6 years and not more than 30 years. 720 ILCS 5/12-14.1(b)(1) (West 2004). The trial court sentenced the defendant to a term of 22 years in the Illinois Department of Corrections for each count of predatory criminal sexual assault, to be served consecutively. The

7

defendant did not file a motion to reconsider his sentence in the trial court before filing a notice of appeal.

¶ 18                                    II. ANALYSIS

¶ 19    The defendant's sole contention on appeal is that his aggregate sentence of 66 years in prison, or 22 years for each count of predatory criminal sexual assault, was excessive where the trial court did not consider the mitigating factors presented during the defendant's sentencing hearing. The defendant contends that the trial court did not consider (1) that the defendant's prior convictions were nonviolent drug or traffic offenses, (2) that he earned his GED, (3) that he learned a trade, (4) that he was raised in a family of heavy drinkers and was physically abused, and (5) that he had a work history dating from 1996.

¶ 20    Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) grants a reviewing court the power to reduce a sentence. However, that power should be exercised cautiously and sparingly. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A reviewing court will not disturb a sentence that falls within the statutory limits unless the trial court abused its discretion. *Id*. An abuse of discretion occurs if the trial court imposes a sentence that is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id*. An abuse of discretion may be found, even if the sentence is within the statutory range, if it is contrary to the purpose and spirit of the law. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. The purpose and spirit of the law are promoted when the trial court's sentence both reflects the seriousness of the offense and gives

8

sufficient consideration to the defendant's rehabilitative potential. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992).

¶ 21 The State contends, and the defendant concedes, that he failed to preserve the issue for review because he did not move to reconsider his sentence. See *People v. Harvey*, 2018 IL 122325, ¶ 15; see also 730 ILCS 5/5-4.5-50(d) (West 2018) (a defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence). Nonetheless, the defendant urges that we review the issue under the plain error doctrine found in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which provides that any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded unless the appellant demonstrates plain error or a defect affecting substantial rights. Sentencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 16.

¶ 22 It is important to note that the doctrine of plain error is not a general savings clause to be used to preserve all errors affecting substantial rights not previously brought to the trial court's attention, but it is a narrow and limited exception to the general forfeiture rule. *People v. Jackson*, 2020 IL 124112, ¶ 81. In addressing a claim of plain error, it is appropriate to determine whether an error occurred at all. See *People v. Hood*, 2016 IL 118581, ¶ 18. This is because without reversible error, "there can be no plain error." *People v. Mitchem*, 2019 IL App (1st) 162257, ¶ 37.

¶ 23   Although it is true that a trial court is not to consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors when fashioning a sentence (see *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990)), "[t]he defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence *** unless it is clearly evident the sentence was improper." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22.

¶ 24   Here, the trial court began the sentencing hearing by mentioning its consideration of the evidence at trial, the PSI, the financial impact of incarceration, and that it would consider evidence and information offered by the parties in aggravation and mitigation. At the close of evidence, the trial court reiterated that it considered all of the items it had previously mentioned as required by the Unified Code, which would have included the aggravating and mitigating factors set forth in sections 5-5-3.1 and 5-5-3.2 of the Unified Code (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2004)). The trial court stated that, with regard to the factors in mitigation set forth at section 5-5-3.1, "the [c]ourt has looked at those factors, considered them." The trial court did not find any of those factors to be applicable to the present case.

¶ 25   The defendant claims that the trial court refused to consider any mitigation at all during the sentencing hearing. However, the record supports the opposite conclusion. The

defendant asserts that the trial court did not consider that the defendant's prior criminal history consisted of nonviolent drug and traffic offenses, that he was raised by a family of heavy drinkers and was physically abused, that he earned a GED, that he learned the plumbing trade, and that he had a significant work history. However, the trial court specifically discussed the defendant's criminal history including his most recent federal offense for possession of an illicit chemical knowing it would be used to manufacture a controlled substance. It is difficult to find, and the defendant provides no evidence for the notion, that the trial court was not aware of the extent and nature of the defendant's criminal history. Further, all of the information that the defendant claims that the trial court failed to consider was present in the PSI. It is presumed that the trial court reviewed and considered the PSI when it fashioned a sentence. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20. In addition to this presumption, the trial court stated more than once on the record that it considered the PSI.

¶ 26    The existence of mitigating factors does not mandate imposition of the minimum sentence or preclude imposition of the maximum sentence. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). If mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the trial court took that evidence into consideration, absent some contrary evidence. *People v. Shaw*, 351 Ill. App. 3d 1087, 1093 (2004). The trial court is not required to recite or assign a value to each factor presented at the sentencing hearing. *Id*. Applying these principles to the instant case, we cannot say that the defendant has shown that the trial court failed to consider the mitigation evidence

contained in the PSI. The trial court is not only presumed to have considered the evidence, but affirmatively stated it did so on the record.

¶ 27 The only statutory mitigating factor that the defendant argued applied at the trial court was that his conduct was the result of circumstances unlikely to recur. 730 ILCS 5/5-5-3.1(a)(8) (West 2018). At the sentencing hearing, the trial court stated: "With regard to the factors in mitigation that are set forth at 730 ILCS 5/5-5-3.1, the [c]ourt has looked at those factors, considered them. And the [c]ourt does not find any of those factors to be applicable, Mr. Bivens." A trial court's finding that a mitigating factor is inapplicable is not the same as failing to consider mitigation, as the defendant argues. In context, it is clear to this court that the trial court's remarks were directed at the statutory factors in mitigation and stand for the proposition that the trial court did not find any of those factors to apply under the facts of this case. The trial court considered both the mitigation evidence presented by the defendant at the sentencing hearing through argument and the PSI, the defendant's criminal history, and considered the referenced statutory mitigating factors. While the defendant argued that the defendant's conduct was the result of circumstances that were not likely to recur, the trial court was not persuaded.

¶ 28 While the trial court did find the circumstances of the offense to be particularly heinous, the trial court also found multiple applicable aggravating factors, including (1) the defendant's four prior felony convictions, (2) the defendant's conduct causing or threatening serious harm, (3) the sentence being necessary to deter others from committing the same crime, (4) the defendant having held a position of trust over the victim because he was her adoptive father, and (5) the victim was under 18 years of age

12

when the offenses were committed. The trial court discussed the public policy behind the sentence and how the legislature had designated the offense of predatory criminal sexual assault of a child a Class X felony because of the heinous nature and severity of the crime. The trial court made its opinion very clear when it stated, "There is no excuse for it [(referring to the crimes committed)]. Nothing *** excuses this type of be [*sic*] behavior, in my opinion." That language indicates to this court that the trial court considered all of the evidence in mitigation. The trial court simply found that certain aggravating factors were applicable, while the statutory mitigating factor offered by the defendant did not apply, and that any other mitigation evidence before the trial court did not justify a sentence of less than 22 years on each count. Further, we note that the sentence fashioned by the trial court was 8 years less than that allowed by the statutory range prescribed by the legislature, 24 years less in the aggregate.

¶ 29    There is nothing in the record to indicate the trial court failed to consider mitigating factors present in the PSI, the defendant's criminal history, nor the offered statutory factor in mitigation, and the defendant has offered no evidence to this court to show a failure to consider any of the mitigating evidence. In fact, the record makes clear that the opposite is true, and the trial court appropriately considered the mitigating evidence presented during the sentencing hearing. We therefore find that there was no error in the trial court's consideration of the various factors outlined above and, in context, the trial court's comment that it did not find the statutory factors in mitigation applicable did not evince a failure to consider the factors in mitigation or the other mitigation in evidence presented at the sentencing hearing. Thus, we find that the trial did

13

not commit an error in its sentencing of the defendant and no plain error analysis is necessary.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons set forth above, we affirm the sentence of the trial court.


¶ 32    Affirmed.